## G. Douglas Burck and Marjorie W. Burck, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 8909-72.    Filed February 13, 1975.

*Bradford S. Magill,* for the petitioners.
*Robert S. Walker,* for the respondent.

Fay, *Judge:* Respondent determined a deficiency in the Federal income tax of petitioners for the taxable year 1969 in the amount of $245,956.55.

The primary issue for decision is whether the petitioners have prepaid 1 year's interest or have in substance received a discounted loan in which no interest was paid during the taxable year in question. If the former, we must then determine whether a deduction in excess of 3/365 of the interest paid during the taxable year would result in a material distortion of income.

### FINDINGS OF FACT

Certain facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners G. Douglas Burck and Marjorie W. Burck, husband and wife, maintained their residence in Malawi, Africa, when the petition herein was filed. They timely filed a joint Federal income tax return for the taxable year ended December 31, 1969.

Any reference to "petitioner" hereinafter shall be deemed to mean G. Douglas Burck.

Petitioners maintained their books and records and filed their income tax return for the taxable year 1969 on the cash receipts and disbursements method of accounting.

After negotiations, the petitioner entered into a loan agreement with the Bank of the Commonwealth (the bank), a Michigan banking corporation, on December 23, 1969. The agreement was consummated on December 29, 1969, when petitioner executed a secured promissory term note in the amount of $3 million, made payable to the order of the bank and bearing interest at a rate of 7 percent per annum payable monthly. One million five hundred thousand dollars of the principal was payable on or before January 4, 1971, the balance on or before March 31, 1972.

The term note was secured by the pledge of 51,333 shares of letter stock of the National Student Marketing Corp. and an agreement to pledge all additional such shares received by petitioner on or before January 30, 1970. Pursuant to such agreement 67,067 additional shares were pledged on January 20, 1970.

Pursuant to the loan agreement petitioner also executed a demand collateral note made payable to the bank in the amount of $2,388,600. Interest was payable at the rate of 7 percent per annum. The proceeds of said collateral note were placed in a non-interest-bearing time deposit account at the bank as security for the collateral note.

By letter authorization from petitioner the proceeds of the term note were wire-transferred by the bank on December 29, 1969, as follows:

$2,000,000 to the Birmingham Bloomfield Bank in Michigan for credit to the account of Comac Company.[1]

$1,000,000 to the First National City Bank in New York (First National) for credit to petitioner's previously existing bank account.[2]

As per the negotiations preceding the loan agreement of December 23, 1969, and at the direction of petitioner First

---

[1] This amount was loaned to the Comac Co., a partnership in which petitioners had no direct or indirect interest except as creditors.

[2] On Dec. 29, 1969, petitioner's bank account at the First National City Bank in New York contained a credit balance of $42,009.02.

National debited his account by the amount of $377,202[3] and transferred said amount to the bank on December 30, 1969.[4]

The proceeds of the $3 million term note were subsequently invested as follows:

| Amount | Use |
|---|---|
| $2,350,000 | Loaned to Comac Co.[5] |
| 100,000 | Purchased an interest in Ohio Investment Co., a partnership |
| 377,202 | Paid to the bank as interest on the term note and collateral note |
| 150,000 | Part payment on the purchase of a personal residence |
| 22,798 | Retained by petitioner |

On their joint Federal income tax return for 1969 petitioners reported gross income of $1,049,387.93.[6] Included in this figure is a long-term capital gain realized in the amount of $968,186. The petitioners claimed as one of several offsets to gross income the amount of $377,202 paid to the bank on December 30, 1969, as an interest expense deduction. The amount reported as taxable income was $41,383.

By statutory notice dated September 14, 1972, respondent disallowed the above deduction.

### OPINION

Our first consideration is whether petitioner, a cash basis taxpayer, prepaid 1 year's interest on certain loans so as to be entitled to an interest expense deduction in the year 1969.

Section 163(a) of the Internal Revenue Code of 1954 [7] provides "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." It is essential that actual payment be made by a cash basis taxpayer if he is to be entitled to the deduction afforded by section 163(a). *Clinton H. Mitchell*, 42 T.C. 953 (1964).

Interest deductions are denied to cash basis taxpayers where the interest obligation is satisfied by the taxpayer's note rather than cash. *Nat Harrison Associates, Inc.*, 42 T.C. 601 (1964);

---

[3] This amount represented 1 year's interest in both the term note and the collateral note.

[4] At the time when this amount was transferred to the bank petitioner's assets, exclusive of cash, stock of National Student Marketing Corp., and miscellaneous tangible personal property, less liabilities, were well in excess of $377,202.

[5] This amount was represented by two demand notes bearing interest at the rate of 12 percent per annum.

[6] This amount is far in excess of petitioner's gross income for the years 1967 and 1968.

[7] All section references are to the provisions of the Internal Revenue Code of 1954 in effect during the taxable years in issue.

*James W. England, Jr.,* 34 T.C. 617 (1960). Similarly there is no payment of interest under section 163(a) when a cash basis taxpayer receives a discounted loan. *John C. Cleaver,* 6 T.C. 452 (1946), affd. 158 F.2d 342 (C.A. 7, 1946), certiorari denied 330 U.S. 849 (1947). That is, when a creditor withholds a certain sum from the face amount of a loan as interest, making available only the loan proceeds in excess of the interest obligation, there is no payment of interest by the debtor until actual repayment of the loan. *John Randolph Hopkins,* 15 T.C. 160, 180-182 (1950).[8]

Petitioner here argues that there was actual payment of interest in the year 1969. Accordingly, he contends that a deduction under section 163(a) should be forthcoming. Respondent, on the other hand, argues that in substance the transaction in question constituted a discounted loan. Accordingly, he maintains that no interest expense deduction should be allowed in the year 1969. We agree with petitioner.[9]

Upon receipt of the loan proceeds petitioner directed that the borrowed money be deposited in his already existing bank account commingling it with the $42,009.02 in the account. Thereafter 1 year's interest on the loans was prepaid in cash from this source. These facts are clearly within the scope of our decision in *Newton A. Burgess,* 8 T.C. 47 (1947).

In *Burgess* the taxpayer borrowed amounts totaling $203,988.90. Interest on this amount, to be prepaid, totaled $4,136.44. Just prior to the due date of the interest the taxpayer borrowed an additional $4,000, from the same creditor. The sum was deposited in his bank account, commingling it with his other funds. Shortly thereafter the taxpayer drew a check on this account in the amount of $4,219.33 to cover the interest payment due.[10] The Commissioner contended that the cash basis taxpayer had in effect merely substituted a note in place of the interest payable, and disallowed the interest deduction. We disagreed and held as follows:

---

[8] See also *Burton Foster,* T.C. Memo. 1973-53, and Rev. Rul. 75-12 I.R.B. 1975-2, 6.

[9] We point out at this juncture that the loan transaction here was not a sham. See *Knetsch v. United States,* 364 U.S. 361 (1960), and *Barnett v. Commissioner,* 364 F.2d 742 (C.A. 2, 1966), affirming 44 T.C. 261 (1965); nor has respondent argued nor do we consider whether the money was borrowed in order to further any "purposive activity" other than obtaining a tax deduction. See *Goldstein v. Commissioner,* 364 F. 2d 734 (C.A. 2, 1966), affirming 44 T.C. 284 (1965), certiorari denied 385 U.S. 1005 (1967).

[10] The additional $82.89 represented prepaid interest on the $4,000 loan.

[The interest due] was one of several bills due in December. The cash received by the petitioner from the proceeds of his $4,000 loan was commingled with his other funds in the trust company. Its identity was lost * * *. The petitioner made a cash payment of interest as such. * * * [8 T.C. at 50.]

Additionally we point out that the loan proceeds were not required for petitioner to make the interest payment. Petitioner maintained ownership of substantial assets from which the interest could have, if need be, been prepaid.[11] Moreover, the prepayment of interest here was an integral part of the loan agreement. The bank would not have proceeded with the loan agreement were it not for the prepayment of interest.[12] We consider the above indicia of a cash payment of interest for purposes of section 163(a).

Notwithstanding the above, respondent relies on our decision in *John C. Cleaver, supra,* to support his position. In *Burgess* we distinguished *Cleaver* in a manner appropriate here:

The situation in this case differs from that in *John C. Cleaver,* * * * where the bank computed interest for five years on the principal amount of each note and deducted the interest so calculated from the principal amount of each note and made the balance available to the taxpayer. Obviously, the interest in the *Cleaver* case never went through the hands of the borrower and never passed through his bank account. * * * [8 T.C. at 50.]

For all of the reasons stated, we hold petitioner to have prepaid, in cash, interest on certain loans. Accordingly section 163(a) will permit petitioner an interest expense deduction for the taxable year 1969.

In light of our holding we must determine whether an allowance of the interest expense deduction in excess of $3/365$ [13] of the interest paid would result in a material distortion of income for the taxable year 1969.

Relying on his authority under section 446, respondent has disallowed a deduction for all but $3/365$ of the above interest expense in 1969 on the ground that it would materially distort petitioner's income; he would allow petitioners the deduction in 1970, the interest being allocable to said year.

---

[11] See the dissenting opinions of Judge McMahon and Judge Leech in *S. E. Thomason,* 33 B.T.A. 576 (1935).

[12] The bank required a prepayment of interest so as to offset certain deductions in 1969 which were larger than its taxable income.

Also, see in regards to a bona fide arm's-length negotiation and subsequent loan transaction *Bayou Verret Land Co.,* 52 T.C. 971, 986 (1969), affirmed on this issue 450 F. 2d 850 (C.A. 5, 1971); and also Rev. Rul. 63-57, 1963-1 C.B. 103.

[13] Respondent concedes that $3/365$ of the interest paid would unquestionably be allowed.

Section 446(b) grants to the respondent broad powers and discretion to determine whether an accounting method employed by a taxpayer clearly reflects income. *Commissioner v. Hansen,* 360 U.S. 446 (1959); *Fort Howard Paper Co.,* 49 T.C. 275 (1967); *Photo-Sonics, Inc.,* 42 T.C. 926 (1964), affd. 357 F.2d 656 (C.A. 9, 1966). "The term 'method of accounting' includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item." Sec. 1.446-1(a), Income Tax Regs. It is the taxpayer's burden of proof to establish that the Commissioner has abused his discretion in a determination of whether the treatment of a certain item results in a material distortion of the taxpayer's income. *Fort Howard Paper Co., supra; Photo-Sonics, Inc., supra; Michael Drazen,* 34 T.C. 1070 (1960).

With particular regard to whether the prepayment of interest distorts income the respondent has, with reliance on section 446(b), issued Rev. Rul. 68-643, 1968-2 C.B. 77. It states in part as follows:

The Service now concludes that the deduction of prepaid interest in the year of payment by a taxpayer employing the cash receipts and disbursements method of accounting may not result in a clear reflection of income for the taxable year of payment. A deduction for interest paid in advance on each indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case by case basis to determine whether a material distortion of income has resulted. Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the income of previous taxable years, the amount of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan. * * * Where a material distortion of income has been found to result from the deduction of prepaid interest, the Service will require the taxpayer to change his method of accounting with respect to such prepaid interest in order to allocate it over the taxable years involved.

We emphasize that although there is legislative support for the approach taken in the revenue ruling, we consider it advisory only. H. Rept. No. 91-413, 91st Cong., 1st Sess., p. 73 (1969), 1969-3 C.B. 246; see also *Andrew A. Sandor,* 62 T.C. 469 (1974). It does not carry the force of law, nor bind this Court in the slightest degree. *Andrew A. Sandor, supra;* see also *United States v. Hall,* 398 F.2d 383 (C.A. 8, 1968); *Stubbs, Overbeck & Associates v. United States,* 445 F.2d 1142 (C.A. 5, 1971). The

revenue ruling is but a useful guide, outlining some of the factors to be considered in a determination of whether the prepayment of interest in a particular case results in a material distortion of income under section 446(b).

After reviewing all of the facts and circumstances of the matter at hand we hold that a deduction for the prepayment of interest would result in a distortion of the taxable income for the year of payment. We make this determination by noting, inter alia, the following: In 1969 petitioner realized a long-term capital gain in the amount of $968,186, an amount far in excess of the gross income of petitioner in the 2 prior years; the prepayment of interest in the amount of $377,202 on December 30, 1969, based on loans to petitioner 1 day earlier in the amount of $5,388,600; and, in addition, petitioner has conceded that one of his motivations in borrowing the funds was the interest deduction he would receive by the prepayment of interest. See *Andrew A. Sandor, supra;* see also *Stice v. United States,* an unreported case (Tex. 1974, 35 AFTR 2d 75-351, 74-2 USTC par. 9791).

For all the reasons stated above, we hold that respondent did not abuse the discretion afforded him under section 446(b) by disallowing all but 3/365 of the interest payment made in 1969 in order to clearly reflect petitioner's income for said year.

*Decision will be entered under Rule 155.*