RENATO R. and ELEANOR A. VALENTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Valente v. Commissioner
Docket No. 6732-72.
United States Tax Court
T.C. Memo 1975-200; 1975 Tax Ct. Memo LEXIS 177; 34 T.C.M. (CCH) 861; T.C.M. (RIA) 750200; June 23, 1975, Filed Stuart A. Rosenblatt and Stephen H. Feuerstein, for the petitioners. Barry D. Gordon and Michael P. Casterton, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1968 in the amount of $ 10,649. The only issue is whether petitioners, who are cash basis taxpayers, are entitled, under sections 163 and *178 446, I.R.C. 1954, [1] to a deduction of $ 15,000 for interest expenses payable in 1969 which they claim to have prepaid in December 1968. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, Renato R. Valente and Eleanor A. Valente (hereinafter referred to as Renato or Eleanor or petitioners), are husband and wife, who, at the time of the filing of the petition in this case, resided in New York, New York. Petitioners, who were cash basis taxpayers, filed their joint individual Federal income tax return for the calendar year 1968 with the district director of internal revenue, Manhattan, New York. In 1968, Eleanor had an outstanding loan with the Bank of New York (hereinafter the Bank), then located at 48 Wall Street, New York, New York, and presently located at 20 Broad Street, New York, New York. Petitioners had collateral securing a line of credit with the bank against which they could draw and on which the interest rate fluctuated. Eleanor would generally execute a demand note when she drew on this line of credit. Each of the demand notes which *179 Eleanor signed provided for a stated rate of interest per annum with the right reserved to the Bank in its absolute discretion to change the rate of interest from time to time by written notice to Eleanor, and none of them provided for advance payment of interest. By the end of 1968 Eleanor had loans outstanding at the Bank of approximately $ 195,000. Prior to December 27, 1968, Renato stopped by the Bank to see John McDonald, a vice president of the Bank, and told McDonald that "because of the outstanding year" they had petitioners intended to prepay interest in 1968 and would like to get the transaction done in that year. On December 27, 1968, Renato hand delivered to the Bank a letter of instruction addressed to McDonald as vice president of the Bank. When Renato arrived at the Bank to deliver the letter, McDonald was out and he gave the letter to Richard Mortimer, an assistant vice president of the Bank. The letter, dated December 23, 1968, read as follows: Dear Mr. McDonald: Please charge interest on my loan account for the entire year of 1969. I would appreciate it if you would make sure that these charges are effected on or before December 31, 1968. Sincerely yours, *180 /s/ Eleanor Valente Eleanor Valente After the first of January 1969, not having received the debit advice normally sent to confirm charges against their account, Renato inquired of McDonald as to the action taken on Eleanor's letter. The letter of instruction, which had been misplaced, was then located and an office memorandum dated January 10, 1969, was sent to the loan department of the Bank stating, "Please charge $ 15,000 to the subject's Deposit Account * * * as of 12/30/68. Mr. Valente wishes to prepay interest in this amount." When instructions are received in the loan department of the Bank, a loan officer will instruct a loan clerk to act upon the debit advice. A loan clerk cannot act upon a debit advice without instructions. The Bank then sent petitioners a debit advice confirming the action taken on January 10. Petitioners' monthly bank statement also reflected that the account was charged $ 15,000 in January 1969. Renato requested the Bank to change the statement to reflect petitioners' instruction that the $ 15,000 interest for 1969 be prepaid in 1968. McDonald suggested that changing the debit memorandum would suffice since changing the statement would require considerable *181 effort on the part of the Bank. Petitioners were issued a revised debit advice which showed a debit to their account of $ 15,000 on January 10, 1969, with a handwritten notation "as of 12/30/68." The petitioners' account with the Bank for the month of December 1968 shows the following: Starting Balance
Deposits/Credits
Checks/Debits
Closing Balance
11/29/68 $ 9,077.36 +
43,503.03 -
17,022.24 =
12/31/68 $ 35,558.15
Date
Amount
Date
Amount
Date
Amount
Date
Amount
Date
Amount
Deposits/
Credits
05
5,000.00R 06
1,250.00
16
2,025.09T
17
8,977.94
27
1,250.00
30
20,000.00T
31
5,000.00
Checks/
Debits
02
21.00
03
4 50.00
04
12.64
04
15.00
04
5,000.00
05
5,000.00C
10
41.45
11
83.97
12
20.00
12
31.50
16
40.00
23
300.00
26
50.00
27
265.00
27
416.70
30
107.63
30
110.25
30
4,750.00
31
7.10
31
300.00
Key: C - Certified Check T - Ticket (Charge or Credit) R - Reversing Entry On December 26, 1968, Eleanor executed a new promissory note to the Bank for $ 20,000, which amount was deposited in petitioners' account on December 30, 1968. Eleanor's account on the *182 books of the Bank showed a credit for prepaid interest on "12/28/67" of $ 14,145.37 which was charged with various debits, the last debit being $ 928.86 on "1/7/69," leaving a "0" balance in the account. After the entry of "1/7/69" the following appears in Eleanor's account: Decrease
Increase
Balance
1/10 as of
12/30/68
$ 15,000.00
$ 15,000.00
1/14/69 Int. to 12/31/68
$ 280.58
14,719.42
1/29/69 Int. to 1/31/69
1,217.85
13,501.57
1/29/69 Int. to 1/31/69
192.29
13,309.28
* * *
2/26/69 Payt. of int. to
2/28/69
1,283.33
12,025.95
3/27/69 Payt. of int. to
3/31/69
1,227.08
10,798.87
3/27/69 Payt. of int. to
3/31/69
193.75
10,605.12
4/28/69 Payt. of int. to
4/30/69
1,466.67
9,138.45
5/28/69 Payt. of int. to
5/31/69
1,515.56
7,622.89
6/26/69 Payt. of int. to
6/30/69
1,466.67
6,156.22
7/29/69 Payt. of int. to
7/31/69
1,705.00
4,451.22
8/28/69 Payt. of int. to
8/31/69
1,705.00
2,746.22
9/30/69 Payt. of int. to
9/30/69
1,650.00
1,096.22
10/31/69 Partial payt. of
Oct. int.
1,096.22
0
On their joint income tax returns for the years 1965 through 1969 petitioners reported amounts of adjusted *183 gross income and taxable income as follows: Adjusted
Year
gross income
Taxable income
1965
$ 59,795
$ 38,302
1966
49,314
18,445
1967
127,818
85,349
1968
112,266
[1] 77,253
1969
45,298
10,319
On their 1968 income tax return, petitioners deducted $ 15,000 as prepaid interest paid to the Bank. Respondent in his notice of deficiency disallowed the deduction, explaining: It is determined that the $ 15,000.00 deduction you claimed for interest expense in 1968 is not deductible in that year because it was not paid in 1968, and for the further reason that it represents interest for the year 1969 which is not deductible in 1968 under section 446 of the Internal Revenue Code. Accordingly, your taxable income is increased in the amount of $ 15,000.00 OPINION Section 163 permits "as a deduction all interest paid or accrued within the taxable year on indebtedness." Petitioners being cash basis taxpayers may deduct interest *184 only when actually paid. Lewis C. Christensen,40 T.C. 563 (1963). Respondent argues that petitioners did not actually pay the Bank $ 15,000 in 1968, either because the charge against their account was not made until 1969 or in the alternative because petitioners borrowed $ 20,000 from their creditor in December 1968 in order to pay this interest. In the alternative respondent contends that the deduction by petitioners of $ 15,000 prepaid interest in 1968 materially distorts petitioners' income for that year within the meaning of section 446. Petitioners submit that the $ 15,000 interest was actually paid upon delivery of the letter of instruction on December 27, 1968. Petitioners rely on such cases as Estate of Modie J. Spiegel,12 T.C. 524 (1949), and Commissioner v. Bradley,56 F. 2d 728 (6th Cir. 1932), affirming 19 B.T.A. 49 (1930), which hold that unqualified delivery of a check is a conditional payment which becomes absolute upon its honor by the drawee bank and that the date of payment relates back to the date of delivery of the check. Petitioners argue that their letter of instruction should be treated the *185 same as a check, since a check is nothing more than an instruction to pay money to the bearer thereof. The petitioners state that the Bank received the letter of instruction not only as drawee, but also as payee, so that the Bank's failure to "present" the instrument for payment until after December 31, 1968, should not penalize petitioners' right to the claimed interest deduction. Petitioners recognize that their letter to the Bank was not, as is a check, a negotiable instrument but argue that the Bank considered it to have the same force and effect as a check adding: The Bank had knowledge of the Petitioners' intentions prior to delivery of the letter in question and could have directed that any instructions to charge the Petitioners' joint checking account be in the form of a check. Petitioners argue that since on December 27, 1968, they had funds in the Bank of about $ 15,800, their direction in the letter should be viewed as if there was an actual debit by the Bank to their account of $ 15,000 on the date the letter was delivered. Petitioners rely on Gertrude Rosenblatt,16 T.C. 100 (1951), in support of their position that where mutual debts exist between *186 two persons, the debit of one debt against the other is equivalent of actual payment. This argument begs the question here for no actual debit was made by the Bank to petitioners' account until January 1969. We do not agree with petitioners' view that the cases holding a check to be payment on the date of its delivery when it is subsequently honored are controlling under the facts here present. All those cases were based on a common acceptance of checks in everyday commerce and the generally accepted principle of negotiable instrument law that a check constitutes a conditional payment which becomes absolute as of the date of the delivery of the check when the check is honored. In Estate of Modie J. Spiegel,supra, at 526-527, 529, we pointed out this general principle, stating: From the time of the adoption of the Uniform Negotiable Instruments Law, the concept of a check as an equitable assignment of a portion of the drawer's account fell into the discard. But both commercial usage and legal authority thereafter considered a payment by check as at least "conditional payment." [1] See Swope v. McClure,239 Ill. App. 578. It was necessarily placed *187 in a different category from a mere promise to pay; or even from such a promise reduced to formal terms and issued in the form of a negotiable promissory note. Cf. Eckert v. Burnet,283 U.S. 140, with Estate of M. A. Bradley,19 B.T.A. 49. The condition imported in the transfer of funds by means of the delivery of a check is that the check must be paid upon presentation. But the problem remains whether that condition be thought of as precedent or subsequent, or, to adopt practical and ordinary terms, whether the check when paid should be considered as having constituted payment at the time it was delivered or at the time *188 it was honored. That seems to us the test which will dispose of the pending question. We may assume that decedent's delivery of checks to the charities in question was at the time no more than a conditional payment of the charitable contribution for which the deduction is here sought. If the subsequent honoring of the checks by fulfilling the condition subsequent related the payment back to the date of delivery, the fact of the contribution and the time it was paid would become fixed. Upon that point, an examination of the authorities renders it impossible to entertain the slightest doubt. Payment by bill or check becomes absolute payment of the debt when the check is paid on presentation. On such payment of the check, the debt is deemed to have been discharged from the time the check was given. * * * [Emphasis added.] [40 Am. Juris. 775.] * * *
It would seem to us unfortunate for the Tax Court to fail to recognize what has so frequently been suggested, that as a practical matter, in everyday personal and commercial usage, the transfer of funds by check is an accepted procedure. The parties almost without exception think and deal in terms of payment except in the *189 unusual circumstance, not involved here, that the check is dishonored upon presentation, or that it was delivered in the first place subject to some condition or infirmity which intervenes between delivery and presentation. * * *
With knowledge of the prevalence of this practice, and of the necessity of treating tax questions from a practical rather than a theoretical viewpoint, it would be astonishing indeed if by the use of the word "payment," [footnote omitted] in section 23(o), Congress did not intend to include a check given absolutely and in due course subsequently presented and paid. * * * The letter of instruction given by Eleanor in this case was not a negotiable instrument and petitioner makes no contention that it was. In fact, had the instruction been, as was the situation in G. Douglas Burck,63 T.C. 556 (1975), that the Bank debit petitioner's account and transfer the funds debited to another payee, there could be no reasonable contention that the payment was made at any time prior to the actual debit and transfer. Petitioner's argument that because the Bank was both the person to whom payment was directed to be made as well as the bank from *190 which the payment was drawn causes the delivery of the letter to constitute payment is in effect a recognition that had the payee been other than the Bank no payment would have been made until the funds were actually transferred. In our view the fact that the Bank was the payee does not change the date of payment from the date when the actual transfer of funds occurred. In Andrew A. Sandor,62 T.C. 469, 482 (1974), on appeal (9th Cir., Sept. 30, 1974), we pointed out that in the transaction there present, it could be argued that the taxpayers were not entitled to a deduction for prepaid interest even on a cash method of accounting where the unearned portion of the interest was refundable to the taxpayer at any time the balance of the principal was paid. We there stated that, "[it] would be quite plausible to consider the prepaid interest as a deposit to be applied as interest when earned in the future, rather than a payment of interest in 1968." We also quoted from United States v. Consolidated Edison Co.,366 U.S. 380, 391 (1961), the quotation which the Court made of the United States Court of Appeals for the Second Circuit in that case that, *191 "[a] payment may constitute * * * a deposit," and stated that this principle might well be applied in determining whether a purported prepayment of interest is actually a payment of interest in the year of prepayment. Here, unquestionably, until the Bank actually debited petitioners' account, the $ 15,000 which they claimed as prepaid interest was a deposit in their checking account subject to their free demand and use. The Bank officials testified to this fact which in any event is obvious. Until the debit on January 10, 1969, it is clear that all petitioners had done was make a request to the Bank for prepayment. It appears here, as in the Sandor case, that even after January 10, 1969, the $ 15,000 was a deposit credited to the account of Eleanor until interest on Eleanor's loan became due and the credit was debited by the Bank against the interest due. Even had this record shown that the Bank had actually consented to petitioners' prepayment of interest through the oral agreement of one of its officers with Renato, we would still consider that no payment of "interest" was made in 1968. Such an oral agreement could not be considered a "payment" by a cash basis taxpayer. *192 Also, any such agreement apparently in accordance with prior practice would have been that the amount be credited to another account of Eleanor's until interest was due on Eleanor's loan and then the interest due be charged against the credit or "deposit." However, this record does not show that the Bank had agreed to accept a prepayment of 1969 interest at any time prior to January 10, 1969, when the debit to petitioners' account was made. The record shows that Renato had spoken to McDonald to alert him that Eleanor was going to send a letter to the Bank with respect to prepayment of 1969 interest, but there is nothing in the record to indicate that McDonald had at that time agreed on behalf of the Bank to accept the prepayment. Under New York Banking Law, article 3, section 108, interest "may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run." [2]
*193 The clear inference from this provision is that where interest is taken in advance, it would be on a note payable at a stated date and not a demand note such as was here involved. Even then, the provision is that "interest may be taken in advance" and not a requirement that it be taken in advance. The lack of likelihood that the Bank would object to accepting advance payment of interest on notes which clearly did not provide for such advance payment does not change the fact that the Bank was not required to follow the direction which Eleanor gave to charge petitioners' account for interest on her loan "for the entire year of 1969." Actually the $ 15,000 was not interest for the "entire year 1969" since it was fully charged against interest due by October 31, 1969. Had petitioners delivered a check to the Bank which was accepted as prepayment of interest, the situation would have been different and we need not decide whether under the circumstances there would have been in fact a deductible prepayment of interest. As we pointed out in the quotation from Estate of Modie J. Spiegel,supra, heretofore set forth, even a check is not considered payment unless it is *194 accepted as such even though general commercial practice is that it is so accepted. We conclude from the facts here present that petitioners did not in fact prepay 1969 interest in December 1968. Having held that petitioners did not actually pay $ 15,000 of prepaid interest in 1968, and for that reason are not entitled to a deduction of the amount in that year, we need not consider the other contentions made by respondent. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise noted.↩
1. This amount was increased by respondent in his notice of deficiency to $ 96,982 by $ 4,729 of net adjustments not here in issue and the disallowance of the $ 15,000 deduction claimed for prepaid interest.↩
1. "Of course, ordinarily a check is not considered payment unless it is accepted as such with the intention that the delivery of the check operate as a release of the original obligation. * * * "But whether or not it be considered that the checks were given and accepted as payment and extinguishment of the original duty of the defendants * * * it must be remembered that such checks are at least a conditional payment * * *." ( Beers v. Federal Security Administrator (Dist. Ct. Conn.), 80 Fed. Supp. 183↩.)
2. N.Y. Banking Law, sec. 108 (McKinney 1971) Rates of interest; installment obligations; personal loan departments 1. Except as otherwise provided in this section, no bank or trust company shall take, receive, reserve or charge on any loan or discount made, or upon any note, bill of exchange or other evidence of debt, negotiable or otherwise, interest, as computed pursuant to this subdivision, at a rate greater than the rate prescribed by the banking board pursuant to section fourteen-a of this chapter, or, if no rate has been so prescribed, six per centum per annum, or two dollars if the interest so computed is less than that amount. Such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run. A reasonable charge by a bank or trust company for the collection of a bona fide bill of exchange, note or other evidence of debt payable at a place other than the place where purchased, discounted or sold, in addition to the interest, shall not be considered interest for the purpose of any law regulating the maximum rate of interest which may be charged, taken or received. Anything contained in this subdivision to the contrary notwithstanding, the charging of interest or discount on a loan or discount at an office of a bank or trust company located outside of the states of the United States of America and the District of Columbia at a rate allowed by the laws of the country, territory, dependency, province, dominion, insular possession or other political subdivision where such office is located, or the acquisition by a bank or trust company of a part interest or the entire interest in any loan or discount heretofore or hereafter made by a bank or trust company or any other banking institution at an office located outside of the states of the United States of America and the District of Columbia, shall not be a violation of this section.↩