JOHN B. HOWARD and LINDA HOWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent DONALD J. TRIOLO and DONNA TRIOLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howard v. Commissioner
Docket Nos. 265-76, 279-76.
United States Tax Court
T.C. Memo 1977-287; 1977 Tax Ct. Memo LEXIS 153; 36 T.C.M. (CCH) 1140; T.C.M. (RIA) 770287; August 24, 1977, Filed Alexander F. Eagle, III, for the petitioners. Lawrence G. Becker and Robert E. Casey, for the respondent.$ FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases, respondent has determined deficiencies in petitioners' Federal income tax for the taxable year 1972 as follows: Docket No.
Petitioners
Deficiency
265-76
John B. and Linda Howard
$4,983
279-76
Donald J. and Donna Triolo
8,256
Concessions having been made, the following issues remain for our decision: [1] (1) Whether, pursuant to section 163(a), [2] a partnership, which uses the cash method of accounting, "paid" $43,862.50 to its lender in 1972, when such amount was withheld from the proceeds *154 of a construction loan made to the partnership so that such amount, if withheld for interest charges, is properly allowable as an interest deduction in computing petitioners' distributive share of the partnership income for 1972; and (2) If such amount were paid, whether the initial service charge for which a portion of it was withheld, represents "interest" within the meaning of section 163. FINDINGS OF FACT All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows. Petitioners John B. and Linda Howard, husband and wife, resided in Hollister, California, at the time they filed the petition herein. They filed a joint Federal income tax return for 1972 with the Internal Revenue Service Center in Fresno, California. Petitioners Donald J. and Donna Triolo, husband and wife, resided *155 in Gilroy, California, at the time they filed the petition herein. They filed a joint Federal income tax return for 1972 with the Internal Revenue Service Center in Fresno, California. Howard Manor Apartments (hereinafter the partnership) is a limited partnership which, during the period in question, was composed of petitioners John B. Howard and Donald J. Triolo (hereinafter petitioners), as general partners, and Cullumber Construction Co., Inc. (hereinafter Cullumber), as the limited partner. The partnership and both petitioners maintained their books and records according to the cash receipts and disbursements method of accounting. The stated purpose of the partnership was to engage in all business necessary and related to the construction, ownership, and management of an apartment complex in Hollister, California. Petitioners contributed certain real property situated in Hollister, California, and Cullumber contracted with the partnership to construct an apartment complex on such property. To finance the construction of the apartment complex, the partnership entered into a building loan agreement with Kassler & Co. (hereinafter Kassler) on December 1, 1972, for a loan *156 of $605,000. Such agreement contained the following provisions: (4)(a) the Borrower shall make monthly applications on FHA Form No. 2403 for advances of mortgage proceeds from the Lender. Applications for advances with respect to construction items shall be for amounts equal to (i) the total value of classes of the work acceptably completed; plus (ii) the value of materials and equipment not incorporated in the work, but delivered to and suitably stored at the site; less (iii) 10 percent (holdback) and less prior advances. The "values" of both (i) and (ii) shall be computed in accordance with the amounts assigned to classes of the work in the "Contractor's and/or Mortgagor's Cost Breakdown", attached hereto as Exhibit "B", and made a part hereof. Each application shall be filed at least 5 days before the date the advance is desired, and the Borrower shall be entitled thereon only to such amount as may be approved by the Lender and the Commissioner. * * *
(d) The Borrower covenants that it will hold in trust each advance hereunder for application to the items for which each advance was requested and approved. * * *
(5) The Lender shall advance to the Borrower out *157 of * * * the proceeds of the loan, amounts for application to the charges or items enumerated below, but only to the extent that such charges have accrued, or that the Borrower is otherwise entitled to payment on account of such items. (a) Interest during construction…. $10,587.50 * * *
(f) Initial service charge… $12,100.00 Concurrently with the execution of the building loan agreement on December 1, 1972, the partnership also executed a deed of trust note (hereinafter the note) made payable to Kassler in the principal sum of $605,000 to bear interest at the rate of seven percent per annum. According to the terms of the note, the principal and interest were to be paid in monthly installments as follows: Interest payable monthly on the first day of January, 1973, and on the first day of each month thereafter until the Note is paid. On the first day of October, 1973 an installment of interest and principal shall be paid in the sum of Three thousand seven hundred fifty nine and 66/100 Dollars ($3,759.66) each, such payments to continue monthly thereafter on the first day of each succeeding month until the entire indebtedness has been paid. In any event, the balance *158 of principal, if any, remaining unpaid, plus accrued interest shall be due and payable September 1, 2013. The installments of interest and principal shall be applied first to interest at the rate of seven percent (7%) per annum upon the principal sum or so much thereof as shall from time to time remain unpaid, and the balance thereof shall be applied on account of principal. To secure such note, the partnership executed a deed of trust on the Hollister property and any improvements to be erected thereon. Kassler applied to the Federal Housing Administration (FHA) for FHA insurance, and FHA issued its commitment to insure the $605,000 loan under the applicable probisions of the National Housing Act, prior to the execution of the building loan agreement. Kassler also received a firm commitment, prior to the execution of the building loan agreement, from the Government National Mortgage Association (GNMA) to purchase the loan from Kassler when the $605,000 was fully disbursed by Kassler and the loan fully insured by FHA. Pursuant to the GNMA commitment, Kassler was required to pay GNMA a $24,200 financing fee which equaled four percent of $605,000, the face amount of the note. *159 The partnership, however, agreed to pay Kassler $21,175 of the $24,200 owed by Kassler to GNMA with Kassler agreeing to pay the remaining $3,025. On December 20, 1972, Kassler deducted from the face amount of the $605,000 note the following: $10,587.50 as a charge for interest payments due during the period of construction of the proposed apartment complex; $12,000 as a two-percent service charge payable by the partnership to Kassler; and $21,175 representing the portion of the $24,200 GNMA financing fee which the partnership had agreed to pay to Kassler. Kassler did not physically disburse any funds to the partnership for the purpose of enabling the partnership to physically disburse the same funds back to Kassler as payment of these three charges. During 1972 the partnership did not disburse any funds to Kassler as payment of these three charges. On February 11, 1974, FHA made its final endorsement and insured the $605,000 loan. On March 20, 1974, GNMA purchased the loan from Kassler by paying Kassler the remainder of the outstanding principal loan balance as of that date less the $24,200 fee owed by Kassler to GNMA. On its U.S. Partnership Return of Income for the taxable *160 year ended December 31, 1972, the partnership reported interest expenses of $43,862.50, representing the total of $10,587.50 (interest during construction), $12,100 (initial service charge payable to Kassler), and $21,175 (charge defraying part of the GNMA financing fee incurred by Kassler). The partnership return showed a net loss of $45,884.88. On their respective joint income tax returns for the taxable year 1972, petitioners deducted their distributive shares of the partnership's net loss. In his notices of deficiency for the taxable year 1972, respondent determined in part that petitioners were not entitled to deduct that part of the reported partnership loss attributable to the claimed $43,862.50 interest expense deduction (which respondent rounded to $43,862). OPINION We must decide, pursuant to section 163(a), [3] whether the partnership "paid" $43,862.50 to Kassler in 1972 when Kassler withheld such amount from the proceeds of a construction loan made to the partnership. We have repeatedly held that a cash basis taxpayer does *161 not "pay" interest when he gives a creditor his note in satisfaction of his interest obligation or when he receives a discounted loan, i.e. the creditor withholds a certain sum from the face amount of the loan as interest and only makes available the proceeds in excess of the interest obligation. Rubnitz v. Commissioner,67 T.C. 621 (1977); Burck v. Commissioner,63 T.C. 556 (1975), affd. 533 F. 2d 768 (2d Cir. 1976); Nat Harrison Associates, Inc. v. Commissioner,42 T.C. 601 (1964); Cleaver v. Commissioner,6 T.C. 452 (1946), affd. 158 F. 2d 342 (7th Cir. 1946). In our nearly identical and recently decided Rubnitz case, we said (supra at 627-628): We consider first the contention that Branham "paid" the loan fee when Great Western "deducted" the $57,750 from the principal amount of the loan. To the extent that the allowability of a deduction to a cash basis taxpayer depends upon his having paid an otherwise deductible expense during the taxable period in issue, the payment must have been made in cash or its equivalent. Thus, in general, when a cash basis taxpayer liquidates *162 an obligation by the execution and delivery of his promissory note, he does not thereby become entitled to a deduction for having paid that obligation. More specifically, a cash basis taxpayer who gives his promissory note in "payment" of his liability for interest, is not thereby entitled to a deduction for "interest paid" under section 163(a). And, in cases which we view as fundamentally indistinguishable from the one now before us, it has been consistently held that a cash basis borrower has not paid interest when the loan transaction is structured so that a loan fee is "withheld" by the lender from what is called the principal amount of the loan and only the supposed principal amount minus the loan fee is actually made available for the borrowing taxpayer's use. [Citations omitted.] Petitioners seek to avoid this line of authority, however, by arguing that in substance Kassler disbursed funds to the partnership which the partnership subsequently returned to Kassler in order to satisfy its interest obligation to Kassler.[4] Such argument is unpersuasive. Paragraph 5 of the building loan agreement required Kassler to advance out of the loan proceeds amounts for application *163 to certain specified charges including interest during construction and the initial service charge, but under paragraph 4, the partnership covenanted to hold each advance in trust "for application to the items for which such advance was requested and approved." [5] Since the partnership's use of any advanced funds would have been substantially limited, "a prearranged retransfer of funds, immediately after they had been deposited in [the partnership's] account, as the final step in an integrated transaction would not constitute the 'payment' which gives rise to a deduction by a cash basis taxpayer." Rubnitz v. Commissioner,supra at 629. Accordingly, we hold that the amount which the partnership deducted as an interest expense in 1972 was not "paid" during such year within the meaning of section 163(a). Therefore, petitioners are not entitled to deduct that part of the reported partnership loss attributable to the claimed interest expense deduction of $43,862.50. [6]
*164 Decisions will be entered for the respondent. Footnotes
1. The correctness of respondent's adjustments to petitioners' medical expense deductions, to the extent they have not already been conceded by petitioners, will be automatically resolved by resolution of these two issues set forth. ↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
3. (a) General Rule. -- There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.↩
4. Petitioners also argue that the $21,175 charge defraying part of the GNMA financing fee incurred by Kassler was interest actually paid and disbursed to GNMA on its behalf by Kassler rather than withheld by Kassler in satisfaction of the partnership's obligation to Kassler. Such argument is contradicted by the evidence. The parties stipulated as follows: "The partnership, in turn, agreed to pay Kassler $21,175.00 of the $24,200.00 owed by Kassler↩ to GNMA." (Emphasis supplied.) In any event, GNMA was not actually paid the financing fee until 1974. 5. While it is unclear under what authority an advance for application to the charge defraying part of the GNMA financing fee incurred by Kassler was made, it is unlikely that Kassler would have made such an advance without a similar restriction on the use of the funds advanced. Moreover, the burden of proving that such funds were advanced to the partnership without restriction on their use is upon petitioners and they have failed to meet it. Rule 142(a), Tax Court Rules of Practice and Procedure.↩
6. Since we hold that the amount claimed as an interest expense deduction was not paid during 1972, it is unnecessary to decide the second issue, i.e. whether the $12,100 initial service charge represents "interest" as defined for section 163 purposes.↩