THOMAS M. FERRILL, JR., and LOUISE B. FERRILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Ferrill v. Commissioner
Docket No. 3677-76.
United States Tax Court
T.C. Memo 1979-501; 1979 Tax Ct. Memo LEXIS 23; 39 T.C.M. (CCH) 715; T.C.M. (RIA) 79501; December 13, 1979, Filed Thomas M. Ferrill, Jr. *24 , and Louise B. Ferrill, pro se. Alan E. Cobb, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $31,269 deficiency in petitioners' income tax for 1972. At the time of trial, respondent filed an amendment to his answer claiming an increased deficiency of $44,449 (resulting in total income tax deficiency asserted of $75,718) for 1972. The primary issue is whether petitioners in 1972 prepaid 360 days interest due for the entire term of their loan or whether they have received in substance a discounted loan upon which no interest was paid during 1972. If we decide that petitioners prepaid 360 days interest, we must then decide whether a deduction in 1972 in excess of 4/360 of the interest paid results in a material distortion of income and whether petitioners are subject to the limitation on investment interest imposed under section 163(d). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing their petition, petitioners Thomas M. *25 Ferrill, Jr. and Louise B. Ferrill were residents of Jenkintown, Pennsylvania. Petitioners maintained their books and records and filed their income tax return for 1972 on the cash receipts and disbursements method of accounting. Commencing in 1972, petitioners engaged in an effort to establish a restaurant under franchise from the Noah's Ark Restaurant in St. Charles, Missouri. In July, 1972, petitioner Thomas M. Ferrill, Jr., and two others interested in the venture visited St. Charles to view the operation of the Noah's Ark Restaurant. Petitioners' efforts to establish the restaurant have been persistent. Specifically, during 1972 petitioners traveled to Florida to select a site for the restaurant. They made an offer to buy a parcel of land in Tampa in the latter part of 1972, but the offer was rejected by the owners. While searching for a restaurant site, petitioners kept in excess of $150,000 in their personal checking and savings accounts. They planned to use these funds during 1972 to purchase land for the restaurant, to enter into a contract to construct the restaurant building, and to purchase capital equipment for the restaurant. Petitioners wanted the income *26 tax deductions for taxes, interest and depreciation to which they would be entitled once they began the restaurant project. When it became inevitable that they would not be able to commit their liquid funds to the restaurant project in 1972, petitioners explored other ventures which might yield tax deductions while still permitting them to pursue their restaurant venture the following year. On December 26, 1972, after exploring other tax shelter possibilities, petitioners applied for a $2,537,720.79 loan from the Industrial Valley Bank and Trust Company ("IVB"). The purpose of the loan designated on the loan application was "conducting of business." During negotiations for the loan, petitioners told the bank's loan officer that they were attempting to establish a restaurant in Florida and that thus far these attempts were not successful. Petitioners specifically requested a loan on which they could obtain a 1972 tax benefit similar to the tax benefit they would have received by claiming deductions for taxes, interest and depreciation had they invested in the restaurant project during the year. Petitioners also hoped that by borrowing, rather than getting involved with some other *27 type of tax shelter, they would be able to establish credit at the prime interest rate. Petitioners planned to use the loan proceeds to purchase a short term investment which could be liquidated when the funds were needed for the restaurant project. On December 27, 1972, petitioners executed a note in the amount of $2,537,720.79 payable in full on December 21, 1973, with interest of 5.75 percent per annum. The rate of interest was subject to variation by IVB upon notice to petitioners. The full $2,537,720.79 was credited to petitioners' IVB checking account on December 27, 1972. Petitioners were free to use the loan proceeds in any manner they chose; IVB did not retain control over the use of the funds. On the same day that the funds were deposited in petitioners' account, this account was debited by the full $2,537,720.79 loan amount to cover the cost of purchasing United States Treasury Bonds ("bonds") bearing 6 3/8 percent interest. The bonds were purchased through petitioners' broker and were held on deposit at a bank in New York City. These bonds, along with several hundred thousand dollars' worth of negotiable securities and certificates of deposit, all owned by petitioners, *28 were pledged as collateral to secure the loan from IVB. Petitioners expected their investment in the bonds to yield a greater return than the amount of interest paid on the loan. Petitioners planned to use the difference to finance their restaurant project. On the same day the loan was made, December 27, 1972, petitioners prepaid interest of $145,513.62 for the term of the loan. By prepaying the interest, the rate of interest on the loan became fixed. This interest was paid by check drawn on petitioners' personal checking account with IVB. The resources to cover this check came from funds previously on deposit in the account plus funds from petitioners' savings accounts which were withdrawn and deposited in their IVB checking account. Petitioners originally intended to use this money during 1972 to purchase a site and begin construction of their restaurant. None of the loan proceeds were used to prepay the interest, nor were petitioners required to prepay the interest as a condition to securing the loan.
On their 1972 return petitioners reported adjusted gross income of $279,905.75 including $252,185.32 in earnings from petitioner Thomas M. Ferrill, Jr.'s law practice. Petitioners *29 claimed the $145,513.62 paid to IVB on December 27, 1972, as an interest expense deduction. This was the only interest expense deduction claimed in 1972. In his notice of deficiency, respondent disallowed $35,938 of the claimed interest expense deduction due to the limitations imposed by section 163(d). In his amended answer, respondent asserted an increased deficiency based on his determination that the $145,513.62 interest expense deduction claimed by petitioners did not represent interest paid during 1972 or, alternatively, that the deduction in excess of 4/360 of the prepaid interest resulted in a material distortion of petitioners' 1972 income. OPINION The primary issue in this case is whether petitioners, cash basis taxpayers, "paid" 360 days' interest on a loan from Industrial Valley Bank and Trust Company ("IVB") so as to be entitled to an interest expense deduction in 1972. Section 163(a), with certain limitations, allows a deduction for "all interest paid or accrued within the taxable year on indebtedness." For a cash basis taxpayer to be entitled to a deduction under *30 section 163(a), actual payment must have been made in cash or its equivalent. Rubnitz v. Commissioner,67 T.C. 621, 627 (1977); Burck v. Commissioner,63 T.C. 556, 558 (1975), affd. 533 F. 2d 768 (2d Cir. 1976). Thus, an interest deduction is denied to a cash basis taxpayer who gives his promissory note rather than cash in satisfaction of his interest obligation. Rubnitz v. Commissioner,supra at 627; Burck v. Commissioner,supra at 558; Nat Harrison Associates, Inc.,42 T.C. 601, 624-625 (1964). Similarly, there is no "payment" of interest within the meaning of section 163(a) at the time a cash basis taxpayer receives a discounted loan from the lender. Cleaver. Commissioner,6 T.C. 452, 454 (1946), affd. 158 F. 2d 342 (7th Cir. 1946), cert. denied 330 U.S. 849 (1947). In that situation, payment of interest occurs only when the borrower repays the loan. Cleaver v. Commissioner,supra at 454-455. Petitioners contend that they paid interest, within the meaning of section 163(a), of $145,513.62 in 1672 and therefore *31 are entitled to an interest expense deduction for that year. On the other hand, respondent contends that in substance the loan transaction constituted a discounted loan and petitioners are not entitled to any interest expense deduction for 1972. Because respondent first raised this matter in his amended answer, he bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.[2] Based on the evidence presented, we conclude that respondent failed to meet his burden. Respondent relies primarily upon Rubnitz v. Commissioner,supra. In Rubnitz the taxpayers were partners in Branham Associates ("Branham") which was organized to construct and operate an apartment complex. Branham arranged for a 25-year $1,650,000 construction loan *32 and agreed to pay, in addition to stated interest over the term of the loan, a "loan fee" of 3 1/2 percent of the loan principal. The loan fee was "payable" at the close of escrow--when the loan proceeds were made available by the lender. Upon closing of escrow, the full $57,750 loan fee and miscellaneous charges of $30 were subtracted by the lender from the loan principal. Only $1,592,220 ($1,650,000 less $57,780) was deposited in the "Loan in Process" account from which Branham was permitted to draw funds for use in construction. On these facts, we held that, although the loan fee was interest, it was not paid, within the meaning of section 163(a), by Branham upon closing of escrow. In response to the taxpayer's argument that the substance of the loan transaction was the bank's initial deposit of the full $1,650,000 in Branham's account and the subsequent withdrawal by Branham of funds to pay the loan fee, we said: However, even if the loan transaction had been so structured--and it was not--Branham would not necessarily be treated as having "paid" the loan fee. For the critical point which appears from the record before us is that *33 Branham never had unrestricted control over any portion of the loan proceeds, much less over the entire $1,650,000. Its powers in respect of these funds were at all times subject to substantial limitations. Under such conditions, a prearranged retransfer of funds, immediately after they had been deposited in Branham's account, as the final step in an integrated transaction would not constitute the "payment" which gives rise to a deduction by a cash basis taxpayer. Thomas Watson,8 T.C. 569, 579; T. Harvey Ferris,38 B.T.A. 312, 317, affirmed per curiam 102 F. 2d 985 [22 AFTR 988] (2d Cir.). Cf. Newton A. Burgess,8 T.C. 47, 50. Moreover, there is no evidence that Branham had sufficient assets--apart from the loan proceeds--from which it could have paid the loan fee in full. Cf. G. Douglas Burck,63 T.C. 556, 559-560, affirmed 533 F. 2d 768 [37 AFTR 2d 76-1009] (2d Cir.).
Rubnitz v. Commissioner,supra at 629. Respondent contends that in this case we similarly have a prearranged retransfer of funds whereby *34 petitioners received $2,392,207.17 while being obligated to repay $2,537,720.79 at maturity. Thus, in substance, respondent argues, the transaction constituted a discounted loan. The facts, however, do not support respondent's position. On December 27, 1972, petitioners' IVB checking account was credited with $2,537,720.79, the entire principal amount of the loan. On that same day, petitioners' account was debited by his same amount to cover the cost of purchasing United States Treasury Bonds. Although these bonds were used as part of the collateral for the loan, IVB did not have control over petitioners' use of the loan proceeds. Also on December 27, 1972, petitioners prepaid the $145,513.62 interest due for the entire 360 day term of the loan. Petitioners paid the interest by drawing a check on their IVB checking account which contained sufficient funds, apart from the loan proceeds, to cover their check. See Burck v. Commissioner,63 T.C. 556 (1975), affd. 533 F. 2d 768 (2d Cir. 1976). In light of these facts, and in the absence of any evidence which demonstrates that the loan was discounted, we hold that on December 27, 1972, petitioners *35 prepaid interest, within the meaning of section 163(a), on their loan from IVB. Compare Heyman v. Commissioner,70 T.C. 482 (1978), appealed (6th Cir. Dec. 1, 1978); Rubnitz v. Commissioner,supra;Cleaver v. Commissioner,supra.Accordingly, section 163(a) is not inconsistent with allowance to petitioners of an interest expense deduction for taxable year 1972. We must next determine whether an allowance of the interest expense deduction in excess of 4/360 of the interest paid results in a material distortion of income for the taxable year 1972. Petitioners contend that they are entitled, as cash basis taxpayers, to an interest expense deduction for the full amount of interest paid in 1972. While a taxpayer may reduce his taxes by means which the law permits, Gregory v. Helvering,293 U.S. 465 (1935), this right is subject to the right of respondent under section 446 to change the taxpayer's method of accounting with respect to a payment of prepaid interest in order clearly to reflect income. Sandor v. Commissioner,62 T.C. 469, 481 (1974), *36 affd. 536 F. 2d 874 (9th Cir. 1976). Specifically, although a cash basis taxpayer was, before December 31, 1976, [3] ordinarily entitled to deduct interest when it was prepaid, he could not do so when this deduction resulted in a material distortion of income. Sandor v. Commissioner,supra at 477-478. Relying on his authority under section 446(b), [4] respondent maintains that the prepaid interest deduction claimed by petitioners in 1972 must be prorated over the life of the loan resulting in a deduction of only 4/360 of the amount paid in 1972. Because respondent raised this matter for the first time in his amended answer, he bears the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.[5] It is respondent's burden to establish that he did not abuse his discretion in determining that the claimed deduction for the entire amount of interest prepaid in 1972 resulted in a material distortion of petitioners' income. We conclude that he has met this burden. *37 Respondent's position, as stated in Rev. Rul. 68-643, 1968-2 C.B. 76, is that a deduction for interest paid in advance on indebtedness for a period not extending more than 12 months beyond the end of the taxable year in which the prepayment was made will be considered on a case-by-case basis to determine whether a material distortion of income resulted. "Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the income of previous taxable years, the amount of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan." Id. at 77. Although this Ruling is merely respondent's position and is not binding upon the Court, it provides us with a useful guideline of factors which may be considered in determining whether the prepayment of interest in a particular case results in the material distortion of income under section 446(b). *38 Burck v. Commissioner,supra at 561-562. Here there is no question that petitioners' income picture for 1972 was materially affected by the claimed interest deduction. Petitioners expected to become involved in their restaurant project during 1972 to the extent that they would be entitled to deductions for taxes, interest and depreciation. These deductions would have reduced their taxable income and hence their income tax. When it became apparent that the restaurant project would not yield tax benefits in 1972, petitioners explored the possibility of other tax shelters. Petitioners chose to secure a loan on which they could prepay the interest due for the term of the note. Among petitioners' non-tax reasons for procuring the loan itself was petitioners' desire to establish credit at the prime rate while maintaining their financial portfolio in a form which allowed them to pursue their restaurant venture. Petitioners applied for and obtained this loan. Four days before the end of the 1972 taxable year, petitioners prepaid the $145,513.62 in interest due for the term of the loan. This prepayment was made at petitioners' discretion; it was not required by IVB *39 as a condition for obtaining the loan. Compare Lewis v. Commissioner,65 T.C. 625, 629 (1975). The resulting $145,513.62 interest expense deduction greatly reduced petitioners' $279,905.75 adjusted gross income for 1972 and therefore the amount of tax that petitioners paid in 1972. Petitioners expected to have large income tax deductions in future years related to their real estate ventures. Thus, petitioners bunched the large interest expense deduction in 1972 where it was expected to do them the most good. See Cole v. Commissioner,64 T.C. 1091, 1104, n. 7 (1975), affd. 586 F. 2d 747 (9th Cir. 1978), cert. denied     U.S.     (1979). Although prepayment of the full amount of interest fixed the interest rate for the term of the loan, we believe that petitioners' sole reason in prepaying the interest was to secure a large 1972 income tax deduction. There is no direct evidence of the petitioners' relative marginal brackets in 1972 as compared to earlier or later years, and, of course, due to respondent's burden of proof, any failure of proof must redound to his disadvantage. However, while it may be a close question, we believe *40 it is a legitimate inference from petitioners' earnest efforts to crowd their deductions into 1972 that 1972 (absent the deductions) was in fact an unusually high income year for petitioners. In the absence of any evidence to the contrary, and in light of all the facts and circumstances, we conclude that petitioners' deduction for prepaid interest resulted in a material distortion of income for the year in issue. Accordingly, we hold that respondent did not abuse the discretion afforded him under section 446(b) by disallowing all but 4/360 of the interest payment made in 1972. Because the total amount of interest allowed as a deduction in 1972 is less than the investment interest exemption for that year under section 163(d)(1)(A), we need not consider whether section 163(d) applies to this case. At trial and on brief petitioners challenged the propriety of procedures respondent employed in making his determination of the deficiency here involved. We have jurisdiction to consider and determine the correctness of respondent's determination of the deficiency involved, but we are without *41 jurisdiction to determine the propriety of administrative policy, motives or procedures employed by respondent in making the determination. Crowther v. Commissioner,28 T.C. 1293, 1301 (1957), revd. on another issue 269 F. 2d 292 (9th Cir. 1959). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. A new theory that is presented to sustain a deficiency is treated as a "new matter" when it increases the amount of deficiency, requires presentation of different evidence, or is inconsistent with respondent's original determination. Estate of Emerson v. Commissioner,67 T.C. 612, 620↩ (1977).
3. Section 461(g), added by Sec. 208(a), Tax Reform Act of 1976, 90 Stat. 1541.↩
4. Section 446(b) provides: (b) Exceptions.↩--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income. 5. See Note 2, supra.↩