T.C. Memo. 1997-411


UNITED STATES TAX COURT


GARY L. PIERCE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

GARY L. PIERCE AND MARY C. PIERCE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6086-94, 6226-94.       Filed September 16, 1997.


<u>Frank W. Louis</u>, for petitioners.

<u>Robert E. Marum</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties as follows:

Gary L. Pierce and Mary C. Pierce

|  | | Penalty |
| Year | Deficiency | Sec. 6662(a)[1] |
| 1984 | $3,513 | $703 |
| 1986 | 71,974 | 14,395 |
| 1987 | 539,914 | [1]105,833 |
| 1988 | 527,851 | 105,570 |
| 1989 | 102,323 | 20,465 |

[1] For taxable year 1987, the penalty pursuant to sec. 6662(a) is shown in the statutory notice as both $151,729 and $105,833. The correct amount is $105,833.

Gary L. Pierce

|  | | Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 1991 | $444,040 | $88,808 |

By reason of respondent's concessions, the remaining issues for decision are: (1) Whether Mary Catherine Development Co. (Mary Catherine), an S corporation engaged in buying and developing land for sale to residential builders, was entitled to use the lower of cost or market (LCM) method, an inventory method of accounting, for taxable years 1989 and 1990 to claim reductions of income for decreases in the fair market value of parcels of land held for development; and (2) whether Gary L. Pierce (petitioner) and Mary C. Pierce are liable for accuracy-related penalties for the years 1984, 1986 through 1989, and 1991 pursuant to section 6662(a) for negligence or intentional

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts have been rounded to the nearest dollar.

disregard of rules and regulations under section 6662(b)(1).[2] Because we decide that Mary Catherine is not entitled to use the LCM method, various issues that would have been implicated by our decision to the contrary have been mooted.

FINDINGS OF FACT

Background

Most of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference.

When the petitions in these cases were filed, petitioners resided in Windsor, Connecticut. Petitioners filed joint Federal income tax returns for 1984, 1986, 1987, 1988, 1989, and 1990. Petitioner filed a separate Federal income tax return for 1991.

Petitioner entered the real estate business in 1969 when he began renovating apartment houses. Later, petitioner changed the focus of his business to building new houses.

Prior to 1986, Derekseth Corp. (Derekseth), petitioner's wholly owned C corporation, was the business vehicle used by petitioner to acquire land, subdivide the land into lots, build houses on the lots, and sell houses and lots to individuals.

On November 21, 1986, Mary Catherine was incorporated under the laws of Connecticut. Petitioner has been the only

---

[2] Respondent concedes that petitioners are not liable for a penalty for substantial understatement of income tax under sec. 6662(b)(2).

shareholder of Mary Catherine from its incorporation through 1991, the final year in issue. Petitioner is also the only shareholder of Deanne Lynn Realty Co. (Deanne Lynn), another S corporation.

Since 1986, the business formerly conducted exclusively by Derekseth has been divided as follows among petitioner's three corporations. Mary Catherine acquires land; obtains zoning, wetlands, and subdivision approvals; improves the land by clearing vegetation, building roads, installing utilities, and subdividing the land into lots; and then sells the subdivided lots to residential builders, including Derekseth. Derekseth purchases lots from Mary Catherine and other developers and builds houses on them. As agent for Derekseth, Deanne Lynn then sells the houses and lots, generally to individuals. After Mary Catherine was formed, Derekseth transferred to Mary Catherine by quitclaim deed its holdings of raw land and building lots.

During 1987, Mary Catherine acquired 869 acres of land (the Ridge) in East Granby, Connecticut. Some of the Ridge was purchased by Mary Catherine directly; the rest was transferred to Mary Catherine by Derekseth and petitioner. During 1988 Derekseth assigned to Mary Catherine by quitclaim deed 140 acres of land (Minnechaug) in Glastonbury, Connecticut.

Commencing in 1989, the real estate market in Connecticut became depressed. The numbers of sales and sale prices of

single-family houses substantially decreased, causing a decline in the fair market value of unapproved real estate.[3]  The values of the Ridge and Minnechaug declined sharply in 1989.

The Ridge Writedown

In 1989, the Federal Deposit Insurance Corporation (FDIC) required Suffield Bank, Mary Catherine's mortgage lender for the Ridge, to obtain an appraisal of the value of the Ridge.  On May 1, 1990, Suffield Bank commissioned an appraisal of the Ridge from Phillip A. Goodsell and Donald R. Brown, who concluded that the value of the Ridge as of April 11, 1990, was $4,395,000 ($2,330,000 for unapproved, unimproved land and $2,065,000 for approved, unimproved land).  Upon receiving the appraisal, Suffield Bank informed petitioner that it was required to write down the value of the Ridge for regulatory purposes, and that it expected Mary Catherine's financial statements to reflect the writedown.  Under the terms of the mortgage loan from Suffield Bank to Mary Catherine, the writedown caused Mary Catherine to be in default, but Suffield Bank did not foreclose.

Petitioner asked his accountants, Bobrow & Bobrow, C.P.A.'s (Bobrow), of West Hartford, Connecticut, whether he could gain any tax benefit as a result of having had to write down the Ridge

---

[3] The term "approved" land refers to land for which all necessary regulatory approvals, such as zoning and wetlands, have been obtained.  "Unapproved" land refers to land for which one or more regulatory approvals have not been obtained.

on Mary Catherine's books.  Bobrow advised petitioner that Mary Catherine could either sell the Ridge or write it down to fair market as of the end of the taxable year under the LCM method. As a result, petitioner was under the impression that these methods were equally valid ways, for income tax purposes, of realizing the loss on the Ridge.

In July 1990, petitioner commissioned his own appraisal of the Ridge from Phillip A. Goodsell and Donald R. Brown, appraisers.  Goodsell and Brown arrived at a value, as of December 31, 1989, of $2,525,000 for unapproved, unimproved land.[4]  Prior to December 31, Mary Catherine had been carrying the Ridge at an adjusted basis of $6,266,352.  The parties have stipulated that the fair market value of the Ridge on December 31, 1989, was $2,525,000.  Using the LCM method, Mary Catherine wrote down the Ridge on its financial statements to its market value and claimed a loss on its 1989 income tax return in the amount of $3,741,352, the difference between the adjusted basis of the Ridge and its fair market value on December 31, 1989.

Prior to 1989, Mary Catherine had not written down any of its land holdings for Federal income tax purposes.  In 1989, when

_____

[4] The record contains no evidence that would explain the $1,870,000 disparity between Goodsell and Brown's valuation as of Dec. 31, 1990, and their valuation as of Apr. 11, 1990. Petitioners contend in their reply brief that the value increased between December and April because a portion of the land received subdivision approval between the two appraisal dates, but there is nothing in the record to support a finding to that effect.

Mary Catherine wrote down the Ridge, it held a number of other parcels, including Minnechaug, that had also been adversely affected by the downturn in the real estate market. None of these other properties were written down in 1989.

The Minnechaug Writedown

The FDIC required Bay Bank, Mary Catherine's mortgage lender for Minnechaug, to obtain an appraisal of Minnechaug, at a time when its value was then less than the amount that Mary Catherine owed to Bay Bank.[5] Bay Bank informed Mary Catherine that the bank had to write down Minnechaug for regulatory purposes and that the bank expected that the reduction in value would be reflected in Mary Catherine's financial statements.

On January 25, 1991, Mary Catherine commissioned an appraisal of Minnechaug from Howard A. Jubrey, Jr., of Appraisal Associates, Inc. Jubrey arrived at a value, as of January 22, 1991, of $2,500,000 for approved but unimproved land. The parties have stipulated that the fair market value of Minnechaug on December 31, 1990, was $2,500,000. Immediately prior to December 31, 1990, Mary Catherine's adjusted basis in Minnechaug was $7,187,700. Mary Catherine wrote down Minnechaug on its 1990 financial statements to its fair market value and claimed a loss on its 1990 Federal income tax return in the amount of

---

[5] The record does not disclose the date or the results of Bay Bank's appraisal of Minnechaug. The record is also very thin with respect to what transpired between the banks and the FDIC.

$4,687,700, the difference between the adjusted basis of Minnechaug and its fair market value on December 31, 1990.

In 1990, when Mary Catherine wrote down Minnechaug, it held a number of other parcels for development, including the Ridge, none of which were written down during that year, or at any time thereafter.

Use of Original Bases for Subsequent Sales

Subsequent to the 1989 and 1990 writedowns, Mary Catherine sold some of the residential lots in the Ridge and Minnechaug. On its Federal income tax returns for years 1990 through 1994, Mary Catherine computed and reported gains for income tax purposes from the sales of these residential lots using the original cost basis of the properties rather than an adjusted basis reflecting the writedowns to market value that Mary Catherine had reported on its income tax returns. As of the time of trial, petitioner had not caused Mary Catherine to file amended returns for taxable years 1990 through 1994 reporting gains on the sale of the residential lots in a manner consistent with the LCM method.

Mary Catherine's Tax Returns

Mary Catherine's Federal income tax returns on Form 1120S for the years 1987 through 1990 were prepared by Bobrow. Attached to Mary Catherine's 1989 and 1990 income tax returns were disclosure statements prepared by Bobrow. The disclosure

statements bear a heading that reads "DISCLOSURE PURSUANT TO SECTION 6661". The disclosure statements explain that Mary Catherine is writing down land and carrying costs to fair market value pursuant to section 1.471-4, Income Tax Regs. The disclosure statements also provide a complete detailed description of the subject land and the prevailing conditions in the real estate market. Attached to the disclosure statements are the appraisals petitioner had obtained, as well as other information about the two communities.

During 1992, prior to initiation of the audit that resulted in respondent's determinations, and for reasons independent of the issues in the lawsuit, discussed infra pp. 12-13, Mary Catherine terminated Bobrow as its accountants and hired Kostin Ruffkess & Co., C.P.A.'s (Kostin) of West Hartford, Connecticut. Kostin, which prepared Mary Catherine's 1991 Federal income tax return, advised petitioner that land could not be written down for Federal income tax purposes.

Since its date of incorporation, Mary Catherine has neither requested nor received the Commissioner's consent to change accounting methods.

Petitioners' Tax Returns

The Ridge writedown resulted in a loss to Mary Catherine that flowed through to petitioner and was claimed by petitioners

as a loss that they deducted on their 1989 Federal income tax return in the amount of $2,121,283.

Petitioners filed an Application for Tentative Refund for 1989 claiming NOL carrybacks to the years 1986 and 1987.  As a result, petitioners' entire tax liability for the year 1986 in the amount of $71,784 was eliminated, and petitioners' income tax liability for 1987 was reduced from $537,770 to $37,937. Petitioners agreed to, and respondent assessed, an increase in their 1987 income tax liability of $42,990, bringing petitioners' remaining 1987 income tax liability to $80,927.

Mary Catherine reported a loss for 1990 in the amount of $5,372,348, $4,687,700 of which was attributable to the Minnechaug writedown.  However, as of the beginning of 1990 petitioner lacked sufficient basis in Mary Catherine to take advantage of such a loss from that year.  In 1990, petitioner lent Mary Catherine $1,743,893, increasing his adjusted basis and his amount at risk, thereby enabling petitioners to claim a deductible loss in the amount of $1,743,893 on their 1990 Federal income tax return.

Petitioners filed an Application for Tentative Refund for 1990 claiming NOL carrybacks to the years 1987 and 1988. Respondent reviewed this Application for Tentative Refund and refunded the remainder of petitioners' 1987 tax paid in the amount of $80,927.  The additional carryback allowed by

respondent also affected the amount of the carryback to 1988. Petitioners' reported 1988 tax liability was reduced from $547,702 to $293,598.

In 1991, petitioner lent Mary Catherine $2,467,094, increasing his adjusted basis and his amount at risk by that amount. This enabled petitioner to claim a deduction from ordinary income for a nonpassive loss on his 1991 income tax return in the amount of $2,467,094, resulting from the Ridge and Minnechaug writedowns.

Petitioner filed an Application for Tentative Refund for 1991 claiming an NOL carryback to 1988 that resulted in petitioners' 1988 income tax liability being further reduced from $293,598 to $19,851.[6]

Petitioner attached a letter dated March 2, 1992, to his 1991 Application for Tentative Refund asking respondent to expedite the refund. The letter referred to significant operating losses experienced by petitioner's companies since 1988, cash-flow problems, banking problems, delinquent payments to vendors, lay-offs, and reduced compensation to employees. The letter stated that "receipt of the refund * * * [was] critical and the potential key to * * * [petitioner's] survival."

---

[6] Petitioners' 1988 income tax liability would have been reduced below $19,851 but for the limitation imposed by the alternative minimum tax.

Petitioners claimed a net operating loss for 1989, which was carried back to 1986, resulting in an excess general business credits carryback for 1986 of $19,000, of which $3,513 was carried back to 1984.  Respondent has disallowed the $3,513 in excess business credits carried back to 1984.  The $3,513 deficiency determined by respondent for the year 1984 is a direct result of the 1989 writedown.  Respondent's disallowance of Mary Catherine's writedowns for 1989 and 1990 resulted in the adjustments to petitioners' net operating loss carrybacks from 1989 to 1986 and 1987 in the amounts of $222,859 and $1,311,418, respectively, from 1990 to 1987 and 1988 in the amounts of $151,729 and $907,516, respectively, and from 1991 to 1988 in the amount of $1,038,814.

Suit Against Bobrow

On December 22, 1993, Mary Catherine and petitioners filed a complaint in the Connecticut Superior Court for the District of Hartford against Alec R. Bobrow, David S. Bobrow, Alan J. Nathan, and Ronald Mamrosh, the Bobrow accountants who prepared petitioners' and Mary Catherine's 1989 and 1990 Federal income tax returns, for breach of contract and negligence in the preparation of the returns.

The complaint alleges that respondent "has assessed against the plaintiff Mary Catherine Development Co. additional moneys due in the form of additional taxes, interest and penalties."

The complaint alleges that the Bobrow accountants were negligent and in breach of contract when they advised Mary Catherine to submit Federal corporate income tax returns claiming losses resulting from the Ridge and Minnechaug writedowns. The complaint further alleges that the Bobrow accountants knew that Mary Catherine was an S corporation and that Mary Catherine's losses would flow through to petitioner and "as such, that all additional taxes, interest, and other penalties [determined against Mary Catherine] could be assessed against the plaintiff Gary L. Pierce as the sole shareholder of the plaintiff corporation." Finally, the complaint alleges that the Bobrow accountants were negligent and in breach of contract when they failed to advise Mrs. Pierce of her liability arising from her having filed joint returns with petitioner.

The suit against Bobrow has been stayed pending the outcome of the case at hand.

OPINION

Issue 1. The Writedowns

The first issue for decision is whether Mary Catherine improperly used LCM, an inventory method of accounting, to compute its taxable income for the years 1989 and 1990.

Normally, a taxpayer computes taxable income using the same method of accounting that he uses to compute income in keeping books. Sec. 446(a). However, the taxpayer may use "(1) the cash

receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary."  Sec. 446(c).  The regulations permit "any combination of * * * [the cash, accrual, or other permissible] methods of accounting * * * if such combination clearly reflects income and is consistently used."  Sec. 1.446-1(c)(1)(iv), Income Tax Regs.  A method of accounting includes an overall method and any specialized methods the taxpayer may use for individual items.  Burck v. Commissioner, 63 T.C. 556, 561 (1975), affd. 533 F.2d 768 (2d Cir. 1976); sec. 1.446-1(a), Income Tax Regs.

A taxpayer may adopt any permissible method of accounting on the first income tax return on which an item appears.  Once a permissible method is chosen, the taxpayer must secure the consent of the Secretary before adopting a new method.  Sec. 446(e).  A change in the method of accounting includes a change in the overall plan of accounting or a change in the treatment of any material item used in the overall plan.  Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.

Petitioner contends that Mary Catherine has been using an inventory method of accounting, including LCM, since Mary Catherine's inception.  Respondent contends that real estate developers are not entitled to use inventory methods of accounting, such as LCM, for income tax purposes.  Respondent

further contends that, prior to 1989, Mary Catherine had not been using an inventory method, and that when Mary Catherine wrote down the Ridge as of yearend 1989, it was adopting a new method of accounting without first securing the consent of the Secretary.  Because we hold that LCM is not a permissible method of accounting for Mary Catherine, we do not reach the question of whether Mary Catherine tried to change an accounting method without the consent of the Secretary.[7]

Section 471(a) provides:

> Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

The Secretary has determined that "inventories at the beginning and end of each taxable year are necessary in every case in which the * * * sale of merchandise is an income-producing factor." Sec. 1.471-1, Income Tax Regs.  The term "merchandise" is not

---

[7] Mary Catherine has nominally been using an inventory method since at least 1987 in that it has checked a box on each income tax return indicating that it is using the LCM method of determining ending inventory.  However, petitioner testified at trial that Mary Catherine carefully capitalized the costs of development and determined an adjusted basis of each lot sold.  While this is consistent with a specific identity inventory method, it is also consistent with proper capitalization of costs for determination of gain under sec. 1001.  We have previously rejected taxpayers' contentions that capitalization of land and building costs is an inventory method.  See, e.g., W.C. & A.N. Miller Dev. Co. v. Commissioner, 81 T.C. 619, 631 (1983).

defined in the Code or regulations.  Attempting to discern the meaning of the term, the Court of Appeals for the First Circuit applied the rule that "`[t]he natural and ordinary meaning of the words used will be applied [in construing tax statutes] unless the Congress has definitely indicated an intention that they should be otherwise construed'".  Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354 (1st Cir. 1970) (quoting Huntington Sec. Corp. v. Busey, 112 F.2d 368, 370 (6th Cir. 1940)), affg. T.C. Memo. 1969-79.  We have long held that the natural and ordinary meaning of "merchandise" does not include real property.  See W.C. & A.N. Miller Dev. Co. v. Commissioner, 81 T.C. 619, 630 (1983); Atlantic Coast Realty Co. v. Commissioner, 11 B.T.A. 416, 419 (1928); Homes by Ayres v. Commissioner, T.C. Memo. 1984-475, affd. 795 F.2d 832 (9th Cir. 1986).

In Atlantic Coast Realty Co. v. Commissioner, supra, the taxpayer owned various parcels of raw land held for sale to customers.  The taxpayer contended that it should be allowed to inventory its land and that it should be allowed to use the LCM method to value its closing inventory.  The Board noted that Congress did not intend, by the predecessor of section 471 (section 203 of the Revenue Act of 1918, ch. 18, 40 Stat. 1060), to confer the right to use inventories on all businesses.  The Board observed that a parcel of real estate is a unique item,

making use of the LCM method of valuation highly impracticable and imprecise. Furthermore, the taxpayer in Atlantic Coast Realty failed to show that the inventorying of real estate was an established and accepted accounting practice. The Board held that taxpayers are not entitled to use the inventory method to account for real property.

In W.C. & A.N. Miller Dev. Co. v. Commissioner, supra, the taxpayer, a real-estate developer, had applied for permission to change to the last-in-first-out (LIFO) method of valuing its inventory of houses constructed and held for sale. The taxpayer admitted that under Atlantic Coast Realty land costs could not be inventoried but contended that the houses on the land could be inventoried and that the job-cost method it had previously used to determine the gain or loss on the sale of each house was a specific identification inventory method of accounting. The Commissioner maintained that the job-cost method was merely a proper capitalization of tax taxpayer's acquisition, development, construction, and other costs. We held that the taxpayer had failed to prove that it had previously used an inventory method of accounting and that the taxpayer had not shown that the use of inventories represented the best practice in its industry in accordance with generally accepted accounting principles. We further held that a finished house on a lot is not "merchandise" within the meaning of section 1.471-1, Income Tax Regs., and that

the Commissioner had not committed an abuse of discretion in rejecting the taxpayer's use of inventories and the LIFO method.

In Homes by Ayres v. Commissioner, supra, the taxpayer used a "square footage method" by which the total cost of developing and constructing houses on a tract of raw land was allocated to each lot based on the number of square feet of floor in each of the completed houses. The taxpayers filed applications to use the LIFO inventory method to value completed houses and partially completed houses, but the taxpayer did not contend that it should be allowed to apply the inventory method to land costs. We held that each house and lot constitutes a parcel of real property, and that, because real property is not "merchandise" within the meaning of section 1.471-1, Income Tax Regs., the taxpayers were not "permitted or required to maintain inventories" and thus could not elect to use the LIFO method.

Not since our predecessor, the Board of Tax Appeals, decided Atlantic Coast Realty Co. v. Commissioner, supra, have we had occasion to hold that a developer may not account for land costs using the LCM method. But underpinning each of the three above-discussed cases is the well-settled rule that land costs may not be inventoried because the Secretary does not permit or require land costs to be inventoried and because the use of inventory accounting for land does not clearly reflect income. Moreover, there are other reasons to disallow the use of inventory methods

of accounting, particularly the LCM method, to real property. Inventory methods generally require the taxpayer to arrive at an annual ending inventory value, which means that an inventory of land would have to be valued frequently. Given the expense and imprecision of land appraisals, inventory methods of accounting would be unwieldy for real property. Also, unless each piece of property is revalued every year, there will always be the potential for the taxpayer to exercise adverse selection in reappraising parcels of loss property and to write them down only when he needs a loss to offset taxable income.

Mary Catherine's use of an inventory method of accounting, including the LCM method of valuing ending inventory, is improper. Petitioner did not present expert opinion testimony that current financial accounting standards allow real property to be inventoried. But as the Court of Appeals for the Ninth Circuit explained in Homes by Ayres v. Commissioner, supra, such expert opinion would not carry the day because tax and business accounting can diverge and the Commissioner has discretion in this area: "The Commissioner has broad discretion over accounting techniques and, as a matter of law, real estate cannot be inventoried until * * * [the Commissioner] changes his position or Congress changes the law." Homes by Ayres v. Commissioner, 795 F.2d at 836. Moreover, as the Court of Appeals observed, the conclusion that real property is not "merchandise"

under section 471 is supported by references in the accounting literature that define merchandise as tangible personal property. Statement 1, A.R.B. No. 43., ch. 4, reprinted in 4 A.I.C.P.A. Professional Standards, AC sec. 5121.03 (CCH 1979); Meigs et al., Accounting: The Basis for Business Decisions 405 (6th ed. 1984); see also Gertzman, Federal Tax Accounting, sec. 6.05[3][b] (2d ed. 1993).

Petitioner argues that Mary Catherine should be allowed to use inventories because the different lots within the same development vary only slightly in value and because information regarding land prices has increased substantially since 1928, when we found in Atlantic Coast Realty Co. v. Commissioner, 11 B.T.A. at 419-420, that there is "no common market and no record of frequent transactions by reference to which the market price could be readily ascertained." We find these arguments unpersuasive.

Petitioner correctly notes, as did the taxpayer in Homes by Ayres v. Commissioner, supra, that the meaning of legal terms is not static. However, the Commissioner's position has long been that real property may not be inventoried, see Rev. Rul. 69-536, 1969-2 C.B. 109, amplified by Rev. Rul. 86-149, 1986-2 C.B. 67, and we see no current justification in our experience or in the literature to which petitioner has referred us for expanding the

definition of "merchandise" to include land, whether raw or cooked.

In Thomas v. Commissioner, 92 T.C. 206, 220 (1989), we stated that "If a taxpayer's method of accounting does not clearly reflect income, then the taxpayer's taxable income is to be computed under a method of accounting that respondent chooses that does clearly reflect the taxpayer's income". Also, section 446(b) provides that "if the method used [by the taxpayer] does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Thus, it is clear not only that respondent may disallow Mary Catherine's use of the inventory method, including the LCM method of valuing ending inventory, but also that respondent may select a method of accounting for Mary Catherine that clearly reflects income. This respondent has done by computing Mary Catherine's income (losses) using the capitalization of expenses method.

Issue 2. Section 6662(a) Accuracy-Related Penalty

Respondent has conceded that petitioners are not liable for the section 6662(a) accuracy-related penalty under section 6662(b)(2) for substantial understatement of tax liability. Therefore, the only issue remaining for decision is whether petitioners are liable for the accuracy-related penalty for the years 1984, 1986 through 1989, and 1991 for negligence or

intentional disregard of rules and regulations under section 6662(b)(1).  Ordinarily, section 6662 does not apply to tax years for which the return is due before December 31, 1989.  However, in the case of carrybacks to years before 1990, section 1.6662-3(d)(2), Income Tax Regs., provides:

> [the accuracy-related penalty] under section 6662(b)(1) is imposed on any portion of an underpayment for a carryback year, the return for which is due * * * before January 1, 1990, if--
>
> (i) That portion is attributable to negligence or disregard of rules or regulations in a loss * * * year; and
>
> (ii) The return for the loss * * * year is due * * * after December 31, 1989.

The Court and the parties agree that all deficiencies at issue in this case result directly from the NOL's generated by the writedowns of the Ridge and Minnechaug reflected in petitioners' income tax returns for 1989 and 1990, the returns for which were obviously due after December 31, 1989.  Thus, in this case, section 6662(a) is applicable to all of the years in issue even though some of the years ended before section 6662 was enacted.

Section 6662(a) imposes a penalty equal to 20 percent of the underpayment attributable to any of the causes listed in section 6662(b).  Section 6662(b)(1) provides that one of the grounds for imposition of the penalty is "Negligence or disregard of rules or regulations."

Section 6662(c) provides that "'negligence' includes any failure to make a reasonable attempt to comply with the * * * [Code]". Section 6662(c) also provides that "'disregard' includes any careless, reckless, or intentional disregard." Negligence includes a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do in a similar situation". Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992) (citing Neely v. Commissioner, 85 T.C. 934, 947 (1985)).

Although a taxpayer remains liable for a deficiency attributable to a return prepared by an accountant, a taxpayer who supplies a qualified tax return preparer with all relevant information and who reasonably and in good faith relies on the preparer's advice is not negligent and has not disregarded rules and regulations, even if the advice is incorrect and results in a deficiency. Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408; Betson v. Commissioner, 802 F.2d 365 (9th Cir. 1986), affg. in part and reversing in part T.C. Memo. 1984-264; Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272 (1976); Hill v. Commissioner, 63 T.C. 225 (1974), affd. without published opinion sub nom. Tenner v. Commissioner, 551 F.2d 313 (9th Cir. 1977); Conlorez Corp. v. Commissioner, 51 T.C. 467 (1968); Brown v. Commissioner, 47 T.C. 399 (1967), affd. per curiam 398 F.2d 832 (6th Cir. 1968). The taxpayer has the burden of proving that he supplied the correct

information to his accountant and that the incorrect returns were the result of the accountant's mistake. Enoch v. Commissioner, 57 T.C. 781, 803 (1972).

Petitioner testified that he sought the advice of Bobrow with regard to deducting losses resulting from Mary Catherine's having been required by its mortgage lenders to write down the Ridge and Minnechaug to fair market value for financial statement purposes. Bobrow then prepared petitioners' returns including detailed statements disclosing the nature of the writedowns and resulting losses. Attached to the disclosure statements are the appraisals and other information about the Ridge and Minnechaug. Examination of Mary Catherine's and petitioners' income tax returns reveals that petitioner must have provided Bobrow with all information necessary for his accountants to render tax advice and prepare the returns. We find that petitioners relied on the advice of Bobrow, and we hold that petitioners were not negligent in doing so.

Petitioners made no effort to hide their position from respondent. Petitioners attached copies of Mary Catherine's income tax returns, including the disclosure statements, to their personal returns. Petitioners also attached copies of the disclosure statements to each Application for Tentative Refund that they filed. The completeness and clarity of petitioners' disclosure statements, and the fact that petitioners attached a

disclosure statement to every form they filed with respondent, confirms our belief that petitioners were not trying to pull the wool over respondent's eyes, but rather, that they were relying on what they then believed to be sound tax advice from their accountants, after having fully disclosed all relevant information to them.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.