RICHARD S. HEYMAN AND ROSALEE A. HEYMAN, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JOSEPH S. HEYMAN AND VIRGINIA S. HEYMAN, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5294–76, 5295–76.    Filed June 26, 1978.

*Andrew E. Anderson,* for the petitioners.
*R. Gary Lowen* and *Jack E. Prestrud,* for the respondent.

DRENNEN, *Judge:* In these consolidated cases respondent determined 1972 income tax deficiencies as follows:

| Docket No. | Petitioners | Deficiency |
|---|---|---|
| 5294–76 | Richard S. Heyman and Rosalee A. Heyman | .... $2,027.70 |
| 5295–76 | Joseph S. Heyman and Virginia S. Heyman | .......7,679.27 |

The only issue for decision is whether interest charges for construction loans of petitioner-husbands' partnership were paid in 1972 as required by section 163(a), I.R.C. 1954,[1] for their deduction.

### FINDINGS OF FACT

Some facts have been stipulated and are so found.

Petitioners Richard S. Heyman and Rosalee A. Heyman, husband and wife, resided in Bowling Green, Ohio, when their petition was filed.

Petitioners Joseph S. Heyman and Virginia S. Heyman, husband and wife, resided in Perrysburg, Ohio, when their petition was filed.

Both couples filed cash basis 1972 joint income tax returns with the Office of Internal Revenue at Cleveland, Ohio.

Richard S. Heyman and Joseph S. Heyman were partners in University Development Co. with respective partnership interests of 30 percent and 50 percent on December 31, 1972.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated.

University Development Co. was a cash basis, calendar year partnership engaged in the business of constructing and operating apartment buildings in Bowling Green, Ohio.

During 1971 University Development Co. negotiated a loan with First Federal Savings & Loan Association of Toledo (First Federal) to finance construction of an apartment complex. On March 22, 1971, a secured note in the amount of $1 million with interest at 9½ percent per annum was executed on behalf of the partnership to First Federal. On December 7, 1971, a second secured note, in the amount of $100,000 with interest at 9½ percent per annum, was executed on behalf of the partnership to First Federal.

The note for $1 million provided for monthly payments of $8,828 to begin March 22, 1972, and to continue for 24 years. These payments were to include principal and interest. Likewise, the note for $100,000 provided for monthly payments of $883, covering principal and interest, payable over the same 24-year term. On March 22, 1972, however, the apartment buildings were not completed, and the parties agreed to postpone payments under the notes until June of 1972.

For First Federal's bookkeeping purposes, the loans were converted from "construction loans" to conventional mortgage loans in June of 1972. No new loan documents were executed.

Two construction loan accounts were maintained by University Development Co. with First Federal. The loan accounts consisted of the $1 million and $100,000 loans, respectively. The partnership's right to draw funds from these accounts was based upon levels of construction completed. During the construction period First Federal charged interest on a monthly basis on the amount of the loan proceeds actually drawn. Pursuant to its custom First Federal simply debited the loan account each month for the interest charges rather than collect the interest from the borrower. Following are debits to these accounts representing interest due and owing for a particular month. These debits reduced the balance of each account subject to withdrawal.

| *$1 million loan account* | *$100,000 loan account* |
|---|---|
| 1/31/72 ...........$6,715.86 | 5/31/72 ..........$186.54 |
| 2/29/72 ............ 7,051.18 | |
| 3/31/72 ............ 7,468.58 | |
| 4/30/72 ............ 7,626.94 | |
| 5/31/72 ............ 7,687.33 | |

When the construction was completed in June 1972 and the construction loans were converted to conventional loans, the partnership was obligated to make monthly payments on the entire face amounts of the loans, plus interest at 9½ percent, over a 24-year period as specified in the notes.

The above interest charges of $36,736.43[2] were deducted by the partnership and thus by petitioners as partners according to their respective interests. Respondent has determined that these amounts are not fully deductible in 1972 on the ground they were not paid in that year.[3]

### ULTIMATE FINDING OF FACT

The interest debited to the partnership's loan accounts did not constitute payments of interest at those times.

### OPINION

Petitioner Richard S. Heyman and petitioner Joseph S. Heyman were partners in University Development Co. with partnership interests of 30 percent and 50 percent, respectively, as of December 31, 1972. In 1971 the partnership secured financing to build an apartment complex. Notes were executed on March 22, 1971, for $1 million and on December 7, 1971, for $100,000 to the lender, First Federal.

Under an agreement with First Federal, the partnership withdrew funds from the two construction loans as required during construction. These funds were released by the bank based on levels of completion. First Federal computed interest monthly on the loan proceeds actually withdrawn. These interest charges were debited to the construction loan accounts, reducing

---

[2]In his notices of deficiency, respondent incorrectly computed the total of these interest charges to be $35,844.35. The parties have stipulated, however, that the correct figure, $36,736.43, is the amount in issue.

[3]Respondent has acknowledged that the interest deductions are allowable as monthly payments are made on the loans. Accordingly, interest amortization has been allowed by respondent for the payments on the permanent loan in 1972 attributable to interest.

the balance in the accounts subject to withdrawal by the partnership. When the construction project was finished in June of 1972, the partnership became obligated to repay the entire face amounts of the notes with 9½ percent interest per annum over a 24-year period, as specified in the notes.

The only issue before us is whether the $36,736.43 of interest which First Federal debited to the partnership's loan accounts in 1972 was, as a result thereof, paid in 1972.

For cash basis taxpayers, section 163(a) generally permits a deduction only for interest "paid" within the taxable year. The payment required to secure a deduction is the payment of cash or its equivalent and the giving of the taxpayer's note is not the equivalent of cash. *Helvering v. Price*, 309 U.S. 409 (1940). Similarly, interest withheld by a lender from loan proceeds is not fully deductible in the year the interest is withheld, but rather is deductible only as principal payments are made. *Cleaver v. Commissioner*, 6 T.C 452 (1946) (reviewed by the Court), affd. 158 F.2d 342 (7th Cir. 1946), cert. denied 330 U.S. 849 (1947). The theory is that giving a promissory note and having interest withheld from the loan proceeds (that is, "discounting" the loan) are indistinguishable. *Wilkerson v. Commissioner*, 70 T.C. 240 (1978); *Rubnitz v. Commissioner*, 67 T.C. 621 (1977).

On the other hand, interest paid to one lender by a cash basis taxpayer with funds borrowed from another is deductible when the interest is paid, not in the later year when the loan is repaid. *McAdams v. Commissioner*, 15 T.C. 231 (1950), affd. 198 F.2d 54 (5th Cir. 1951); *Perry v. Commissioner*, 28 B.T.A. 497 (1933) (reviewed by the Board of Tax Appeals).

Where funds used to pay interest are borrowed from the lender of the principal, *Perry* and *Cleaver* come into conflict. Instruction for where to draw the line between paying interest with borrowed funds (*Perry*) or discounting a loan (*Cleaver*) is provided by comparing *Rubnitz v. Commissioner, supra*, with *Wilkerson v. Commissioner, supra*.

In *Rubnitz*, a partnership arranged for a 25-year $1,650,000 construction loan and agreed to pay, in addition to stated interest over the term of the loan, a "loan fee" of 3½ percent of the loan principal. This so-called loan fee was "payable" at the close of escrow—when the loan proceeds were made available to the lender. Upon closing of escrow, the full $57,750 loan fee and additional charges of $30 were deducted by the lender from the

loan principal. Only $1,592,220 was deposited in the "Loan in Process" account from which the partnership could draw funds for use in construction. On these facts, we held that, though the loan fee apparently was interest, it was not paid by the cash basis partnership upon closing of escrow. Further, we held the transaction was governed by *Cleaver* and related authorities.

In response to the argument that the substance of what occurred in *Rubnitz* was no different from the bank's initially having deposited the full $1,650,000 in the partnership's account and the partnership subsequently having withdrawn funds from this account to pay the loan fee, we said:

> However, even if the loan transaction had been so structured—and it was not—Branham would not necessarily be treated as having "paid" the loan fee. For the critical point which appears from the record before us is that Branham never had unrestricted control over any portion of the loan proceeds, much less over the entire $1,650,000. Its powers in respect of these funds were at all times subject to substantial limitations. Under such conditions, a prearranged retransfer of funds, immediately after they had been deposited in Branham's account, as the final step in an integrated transaction would not constitute the "payment" which gives rise to a deduction by a cash basis taxpayer. *Thomas Watson*, 8 T.C. 569, 579; *T. Harvey Ferris*, 38 B.T.A. 312, 317, affirmed per curiam 102 F. 2d 985 (2d Cir.). Cf. *Newton A. Burgess*, 8 T.C. 47, 50. Moreover, there is no evidence that Branham had sufficient assets—apart from the loan proceeds—from which it could have paid the loan fee in full. Cf. *G. Douglas Burck*, 63 T.C. 556, 559–560, affirmed 533 F. 2d 768 (2d Cir.). [67 T.C. at 629.]

In *Watson* and *Ferris*, the authorities cited in *Rubnitz* as direct support, the taxpayers maintained their bank accounts at the same banks from which the loans were obtained. The banks merely credited the loan proceeds to the taxpayers' accounts and immediately charged the accounts for the amounts at issue. Therefore, even though the loan proceeds were first credited to the accounts, the lenders retained control over the proceeds by virtue of the accounts being maintained with the lenders.

In contrast, in *Wilkerson* we determined that payment of interest with funds borrowed from the lender had occurred where it gave up control of the borrowed funds, the funds were commingled with the borrower's own funds in another bank, and then the commingled funds were used to prepay interest. In accord are *Burgess v. Commissioner* and *Burck v. Commissioner*, cited in the quoted portion of *Rubnitz v. Commissioner, supra.*

By "debiting" the partnership's loan accounts for monthly interest, First Federal withheld that interest from the principal

amount of the loan and only the principal amount minus the interest was actually made available for the borrowing partnership's use. As such, this case is not meaningfully distinguishable from *Cleaver, Rubnitz,* and like-minded cases. The $36,736.43 in interest charges was not paid by the partnership in 1972, and is therefore not fully deductible under section 163(a).

Petitioners, relying upon *Burgess* and *Burck,* argue that First Federal would have agreed to disburse the funds directly to the partnership to pay the interest had it been known it would affect the deductibility of the interest. An officer of First Federal testified in support of this assertion. We must decide this case, however, on its facts and the lack of actual payment remains a fact regardless of any assertions as to how things might have been done otherwise. See *Rubnitz v. Commissioner, supra.* Other arguments of petitioner, focusing on how First Federal reported the interest, are beside the point.

*Decisions will be entered under Rule 155.*