856 F.2d 1169
 62 A.F.T.R.2d 88-5715, 88-2 USTC P 9510
 James A. ALLAN and Eileen Allan; Dennis M. Evavold and
Joanne L. Evavold; Lowell Gordon; Donald J. Hamm and
Beverly J. Hamm; William D.C. Mattison and Barbara A.
Mattison; Bruce M. Nelson and Doris A. Nelson; Robert
Osterbauer; Daniel R. Vaughan and Roberta E. Vaughan, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 No. 86-2268.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1987.
Decided Sept. 16, 1988.
 
 Bruce R. Ellisen, Washington, D.C., for appellant.
 Steven L. Ross, Minneapolis, Minn., for appellees.
 Before LAY, Chief Judge, and HEANEY and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 In this case, we review that part of a decision of the United States Tax Court[1] holding that the entire amount of a nonrecourse obligation, including the original mortgage principal and advances made by the mortgagee for interest payments, was properly included in the "amount realized" upon the transfer of the property. For the following reasons, we affirm.
 
 I. BACKGROUND
 
 2
 Appellees were partners in Stevens House Co. (Partnership), a Minnesota limited partnership. On November 1, 1971, the Partnership agreed to purchase a 72-unit apartment building and related personal property (the Apartment) for $989,000. The Partnership acquired the Apartment subject to a $943,500 nonrecourse mortgage in favor of George C. Jones Co. (Jones). The mortgage was insured by the Department of Housing and Urban Development (HUD) pursuant to section 221(d)(4) of the National Housing Act, 12 U.S.C. Sec. 1715l (d)(4). Subsequent to purchasing the property, the Partnership took deductions for interest and real estate taxes on the accrual basis, and paid all expenses associated with the property.
 
 
 3
 In 1974, upon the Partnership's default, HUD acquired the mortgage from Jones, pursuant to the provisions of the mortgage insurance contract. Upon acquiring the mortgage, HUD paid the real estate taxes associated with the Apartment as they became due and charged the Partnership for interest payments on the mortgage. Pursuant to paragraph 10 of the mortgage,[2] both types of advances were added to the mortgage principal, thus becoming nonrecourse; interest was charged, at the mortgage rate, on the increased principal amount. The Partnership deducted these amounts as they accrued.
 
 
 4
 The Partnership's financial difficulties continued unabated. In 1978, HUD initiated foreclosure proceedings. Ultimately, the Partnership transferred, in lieu of foreclosure, all of its interest in the Apartment to HUD. The Partnership also paid $56,956 to HUD in connection with the transfer. The Partnership was absolved of all further liability.
 
 
 5
 During the period that HUD had been paying the real estate taxes and interest on behalf of the Partnership, and adding the amount of the advances to the nonrecourse obligation, the Partnership accrued and claimed deductions for $297,482 in interest and $260,005 in real estate taxes. See 86 T.C. at 658. The Commissioner does not challenge those deductions.
 
 
 6
 At the time of transfer, the property's fair market value was substantially less than the outstanding mortgage. The Partnership reported a capital gain of $700,633 as a result of the transfer.[3]
 
 
 7
 Appellees argued that the entire amount of the outstanding mortgage debt to HUD, including the original principal, the interest payments charged and the real estate taxes paid, was properly included in amount realized under Commissioner v. Tufts, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983).
 
 
 8
 The Commissioner, on the other hand, argued that the transaction was properly bifurcated into two components: relief from the mortgage principal and relief from the liability for accrued interest and taxes. The Commissioner contended that the interest and real estate taxes had not actually been paid by the Partnership, and that "unpaid" expenses do not fall within the ambit of Tufts, and should therefore be considered separately.[4] The Commissioner concluded that if these amounts were not included in amount realized, they were properly recognized as ordinary income under the "tax benefit rule," because the discharge of the liabilities was "fundamentally inconsistent" with the prior deductions. In essence, the Commissioner did not wish to allow appellees to receive a deduction at ordinary income rates, and then recognize the discharge of the obligation upon which the deductions were based at capital gains rates.
 
 
 9
 The Tax Court held for appellees, concluding inter alia, that the advances made by HUD were deemed paid by the Partnership through their addition to the outstanding mortgage principal amount, and that the rationale of Tufts required their inclusion in amount realized; leaving no room for application of the tax benefit rule.
 
 
 10
 On appeal, the Commissioner reasserts his position that the interest advances made by HUD were accrued but "unpaid" by the Partnership; that the rationale of Tufts does not apply to "unpaid" interest; and that therefore the tax benefit rule should apply to properly account for the relief from the obligation to pay the interest. The Commissioner has conceded that the Tufts rule should apply to the real estate taxes because the taxes were paid to the local taxing authorities by a third party, HUD, who then added those amounts to the outstanding debt. "In essence, the [P]artnership borrowed money from HUD and used the money to pay the taxes." Commissioner's Brief at 13.
 
 
 11
 Because we believe that the same analysis applies to the interest payments, we affirm the judgment of the Tax Court.
 
 II. DISCUSSION
 
 12
 It is well settled that the transfer of property by deed in lieu of foreclosure constitutes a "sale or exchange" for federal income tax purposes. Millar v. Commissioner, 67 T.C. 656 (1977), aff'd, 577 F.2d 212 (3d Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 704 (1978); Freeland v. Commissioner, 74 T.C. 970 (1980).
 
 
 13
 Section 1001 of the Internal Revenue Code (the Code), 26 U.S.C. Sec. 1001,[5] governs the determination of gains and losses on the sale or exchange of property. Code Sec. 1001(a) provides that the gain from the sale or other disposition of property shall be the excess of the amount realized over the adjusted basis of the property. Code Sec. 1001(b) defines amount realized as the sum of any money received plus the fair market value of any property received.
 
 
 14
 In Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947), the Supreme Court held that upon the sale of property subject to a nonrecourse debt, the amount realized by the taxpayer includes the balance of the nonrecourse debt. The Crane Court left open the possibility that amount realized might not include nonrecourse obligations in excess of the fair market value of the property, Crane, 331 U.S. at 14 n. 37, 67 S.Ct. at 1054-55 n. 37; however, subsequent lower court decisions rejected this suggestion and held that the full balance of the nonrecourse debt was properly included in amount realized. See, e.g., Millar, 67 T.C. at 660.
 
 
 15
 In Commissioner v. Tufts, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983), the Supreme Court answered the question left open in Crane. The Court held:
 
 
 16
 When a taxpayer sells or disposes of property encumbered by a nonrecourse obligation, the Commissioner properly requires him to include among the assets realized the outstanding amount of the obligation. The fair market value of the property is irrelevant to this calculation.
 
 
 17
 Tufts, 461 U.S. at 317, 103 S.Ct. at 1836.
 
 
 18
 The Tufts Court noted that Crane approved the Commissioner's decision to treat a nonrecourse mortgage in this context as a true loan. The Court went on to discuss the rationale for including the full amount of a nonrecourse obligation in amount realized: When a taxpayer receives loan proceeds, he does not include them in income on the assumption that the loan will be repaid; if the taxpayer applies the loan proceeds to the purchase of property used to secure the loan, and the obligation to repay is subsequently extinguished, it must be accounted for in amount realized when the property is sold. Tufts, 461 U.S. at 307-09, 103 S.Ct. at 1831-32.
 
 
 19
 We agree with the Tax Court's reading of Tufts, that the amount realized is the full amount of the nonrecourse liabilities which are discharged as a result of the transfer of the property. 86 T.C. at 666-67. Therefore, our inquiry is whether the advances for interest added to the nonrecourse mortgage principal, pursuant to paragraph 10 of the mortgage, was a legitimate debt obligation, i.e., a true loan.
 
 
 20
 Appellees contend that HUD loaned the Partnership the money to pay the interest and real estate taxes as they became due, accounting for the advances by adding them to the principal amount of the total nonrecourse loan, and then charging the mortgage rate of interest on the entire amount. They argue that the Partnership thus actually became obligated to repay the new principal amount as well as interest on that amount.
 
 
 21
 Our review of the record indicates that the advances made by HUD were "true loans," which were secured by the Apartment. It is clear that the relationship between the Partnership and HUD was arms length, and there is no evidence to suggest that the mortgage or any of its terms, including paragraph 10, were entered into for tax-motivated reasons unrelated to standard commercial practice. Moreover, the record supports the contention that HUD advanced the carrying costs for legitimate business reasons; specifically, HUD apparently hoped that its loan would afford the Partnership additional time to work out of its financial difficulties, and thereby be able to repay HUD the full amount of the mortgage obligation. Finally, there is no doubt that had the Apartment recovered financially, the Partnership would have been legally obligated to repay the entire outstanding principal amount of the mortgage, including the advances and the interest thereon.
 
 
 22
 The Commissioner, while now conceding that the advances constituted a "true loan" with respect to the advances for real estate taxes, claims that the Partnership did not actually borrow the money used to pay the interest because HUD cannot pay itself interest. We are unpersuaded by this analysis.
 
 
 23
 If the Partnership had borrowed the money to pay the interest to HUD from a different lender, giving that lender a junior nonrecourse mortgage on the Apartment, no challenge would apparently be made to the Partnership's assertion that the interest was paid. It is only because the Partnership secured additional loans from HUD, equal to the interest paid, that the Commissioner claims the interest was "unpaid," in that no money actually changed hands, and that therefore the advance was not legitimately added to the outstanding nonrecourse obligation.
 
 
 24
 The Tax Court noted that "in essence, [appellees] borrowed money from a third party, took the cash and paid expenses connected with the property, i.e., interest and taxes * * * ," and secured the loan only by the property. 86 T.C. at 666. We see no distinction in economic substance in this instance between borrowing from a third party to make the interest payments to HUD or borrowing that money from HUD. See Battelstein v. Internal Revenue Service, 631 F.2d 1182 (5th Cir.1980) (en banc) (Politz, J., dissenting). In both cases, the Partnership is liable for the increased principal amount of the loan.[6] This is particularly true where there is no evidence that the transaction was tax motivated.
 
 
 25
 Because we hold that the advances made by HUD to pay interest on behalf of the Partnership constituted a true loan properly added to the nonrecourse obligation, it follows inexorably that those amounts are properly included in "amount realized" under Tufts. Our holding that the interest advances were properly taken into income under Tufts precludes the application of the tax benefit rule to those same items, notwithstanding the fact that the Partnership took deductions at ordinary income rates, see Tufts, 461 U.S. at 310 n. 8, 103 S.Ct. at 1832 n. 8.
 
 
 26
 Accordingly, the judgment of the Tax Court is affirmed.
 
 
 
 [1]
 The Honorable Charles E. Clapp II, United States Tax Court Judge. Judge Clapp's opinion is reported at 86 T.C. 655 (1986)
 
 
 [2]
 Paragraph 10 provides, in pertinent part, as follows:
 In the event of Mortgagor's failure to pay any sums provided for in this Mortgage, the Mortgagee, at its option, may pay the same. * * * [I]f the Mortgagor shall fail to pay any other governmental or municipal charge, the Mortgagor shall forthwith make good the deficiency or pay the charge before the same become delinquent or subject to interest or penalties and in default thereof the Mortgagee may pay the same. All sums paid by the Mortgagee and any sums which the Mortgagee may be required to advance to pay mortgage insurance premiums shall be added to the principal of the debt secured hereby and shall bear interest from the date of payment at the rate specified in the Note and shall be due and payable on demand. * * *
 
 
 [3]
 This amount was computed by taking the difference between the total debt owed to HUD, including the additional principal representing advances for interest and real estate taxes ($1,455,941) and the adjusted basis ($650,653). A portion of this difference ($104,655) was reported as ordinary income and was not in dispute
 
 
 [4]
 The Commissioner had also argued in the Tax Court that because the Partnership had accrued and deducted the amounts representing real estate taxes and interest, rather than treating those items as capital assets, the tax benefit rule requires inclusion of those items in ordinary income. The Tax Court rejected this argument, quoting Tufts: "Our analysis applies even in the situation in which no deductions are taken. It focuses on the obligation to repay and its subsequent extinguishment, not on the taking and recovery of deductions." 86 T.C. at 662, quoting Tufts, 471 U.S. at 310 n. 8, 103 S.Ct. at 1832 n. 8. The Commissioner has not taken issue with this holding on appeal
 
 
 [5]
 Unless otherwise indicated, all Code section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue
 
 
 [6]
 The Commissioner suggests that the Partnership could not have borrowed the money from another lender because it had no equity in the property, and thus no way to induce a new lender to take a junior nonrecourse debt. The thrust of the Commissioner's argument seems to be that the borrowing from HUD was not legitimate debt because the debt clearly exceeded the fair market value of the Apartment. We disagree. First, the record is not clear as to the value of the property at the time of the loan; second, as noted earlier, the record indicates that HUD loaned the money for legitimate business reasons; and third, the Commissioner has conceded that the nonrecourse debt incurred as to the real estate taxes should be included in "amount realized," and was therefore legitimate debt. It is inconsistent to argue in favor of a dissimilar conclusion as to the advances for interest payments