T.C. Memo. 2013-56

UNITED STATES TAX COURT

PHILIP C. SMOKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 31130-09, 28928-10.　　　　Filed February 21, 2013.

<u>Joseph Falcone</u>, for petitioner.

<u>Robert D. Heitmeyer</u>, <u>Alexandra E. Nicholaides</u>, and <u>Mindy Y. Chou</u>, for

respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  These cases are before the Court consolidated for purposes of

trial, briefing, and opinion.  Respondent determined respective deficiencies of

$1,382 and $17,974 in petitioner's 2006 and 2007 Federal income tax, as well as a

[*2] $3,595 accuracy-related penalty under section 6662(a) for 2007.[1]  We decide the following issues:  (1) whether petitioner is entitled to a mortgage interest deduction for either of 2006 and 2007 (subject years) to the extent his acquisition indebtedness exceeded $1 million.  We hold he is not; (2) whether for the subject years petitioner is entitled to mortgage interest deductions for amounts capitalized into the principal of a mortgage note but not actually paid.  We hold he is not; and (3) whether for 2007 petitioner is liable for a section 6662(a) accuracy-related penalty.  We hold he is.

## Background

I.     Overview

The parties submitted this case to the Court fully stipulated under Rule 122.  Our background statement of this case is based on the parties' stipulation of facts and the exhibits submitted with it.  The stipulated facts are found accordingly.  Petitioner, a cash basis taxpayer, resided in Michigan when the petition was filed.

During the subject years petitioner owned two properties:  one in Michigan (Michigan property) and the second in California (California property) (collectively, properties).  Each of the properties was highly leveraged during the

---

[1]Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code (Code) in effect for the years at issue.  Dollar amounts are rounded.

[*3] subject years, and the amounts of the qualified residence interest deductions to which petitioner is entitled is the main source of the parties' contention.

II.    Encumbrances on the Michigan Property

    A.    First Mortgage

Petitioner leveraged the Michigan property with a primary mortgage in 2004.  More precisely, in July 2004 he executed a $450,000 adjustable rate note (Washington Mutual note) secured by a mortgage on the Michigan property in favor of Washington Mutual Bank, F.A. (Washington Mutual).  The Washington Mutual note was set to mature on August 1, 2034, and charged floating rate interest on the unpaid principal of the note until the loan was fully repaid.  The rate was initially set at 4.125% but reset monthly on the basis of a specified index. Significantly, the Washington Mutual note was capped as to interest rate and limited as to payment fluctuations; the Washington Mutual note capped the interest rate at 9.95% and provided that a new monthly payment, determined every 12 months, would be limited to 7.5% more or less than the monthly payment due in the preceding 12-month period.  Under the terms of the Washington Mutual note, if the monthly payment in any month was less than the interest portion of an amount determined to be necessary to repay the unpaid principal balance then owed in substantially equal monthly payments by maturity, the excess interest

[*4] would be added (capitalized) into the principal of the note. In no event, however, could the principal of the note exceed $562,500. Finally, the Washington Mutual note provided that any unpaid portion of principal or interest as of the maturity date would become due on that date as a balloon payment.

The parties have stipulated that the "acquisition indebtedness" within the meaning of section 163 with respect to the Michigan property was $468,397 in 2006 and $483,095 in 2007. The parties have also stipulated that in 2006 and 2007 petitioner made interest payments and was charged deferred interest (i.e., unpaid interest capitalized into principal) in the following amounts:

| Year | Interest payment | Deferred interest |
|------|------------------|-------------------|
| 2006 | $19,828 | $12,275 |
| 2007 | 21,316 | 15,973 |

B.  Home Equity Line of Credit

In addition to the first mortgage, in or around 2005 petitioner secured a home equity line of credit (Wells Fargo HELOC) of $100,000 on the Michigan property from Wells Fargo Bank, N.A. (Wells Fargo). The parties agree that the Wells Fargo HELOC is home equity indebtedness within the meaning of section 163(h)(3)(C) and had a balance of $94,595 at yearend 2006. The parties also

**[*5]** agree that petitioner paid, and is entitled to deduct, qualified residence interest of $7,720 and $3,100 on the Wells Fargo HELOC for 2006 and 2007, respectively.

III.    Encumbrances on the California Property

The California property was also encumbered although the record does not include the note or related mortgage. The parties agree that the average acquisition indebtedness within the meaning of section 163 for the California property was $733,287 in 2006 and $722,586 in 2007. The parties have also stipulated that petitioner paid to Wells Fargo mortgage interest of $47,694 in 2006 and $47,002 in 2007 with respect to the California property.

IV.    Total Acquisition Indebtedness

The parties have stipulated that the total acquisition indebtedness within the meaning of section 163 for both properties, disregarding the $1 million limitation under section 163(h)(3)(B)(ii), was $1,201,684 and $1,205,680 for 2006 and 2007, respectively.

V.    Petitioner's Federal Income Tax Returns and Notices of Deficiency

Petitioner timely filed Federal income tax returns for 2006 (2006 return) and 2007 (2007 return). The 2006 return and the 2007 return, listing petitioner's filing status as single, claimed respective deductions of $75,511 and $83,515 for home

[*6] mortgage interest. Included in the deduction claimed for each year was deferred--that is, accrued but unpaid--interest which had been capitalized into the principal of the Washington Mutual note; i.e., $12,275 for 2006 and $15,973 for 2007. Mostly as a result of the home mortgage interest deductions, petitioner reported total tax liabilities of $283 and $263, respectively, on his 2006 return and 2007 return. Petitioner subsequently mailed to respondent an amended Federal income tax return for 2006 claiming additional itemized deductions of $817; respondent did not accept or process the amended return.

Respondent issued to petitioner a separate notice of deficiency as to each of the subject years. The notices of deficiency collectively disallow petitioner's

[*7] mortgage interest expense of $10,876[2] for 2006 and $83,515[3] for 2007.

Respondent also determined petitioner is liable for an accuracy-related penalty

under section 6662(a) of $3,595. Petitioner timely filed his petitions with the Court.

Discussion

I.     Qualified Residence Interest Deductions

Deductions, including those for qualified residence interest, are a matter of

legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

_____

[2]This amount is different from the amount of deferred interest, $12,275, which the parties have stipulated. See supra p. 4. On his 2006 return petitioner claimed a deduction for mortgage interest reported on Form 1098, Mortgage Interest Statement, of $67,827 (line 10, Schedule A, Itemized Deductions) and a deduction for mortgage interest not reported on Form 1098 of $7,684 (line 11, Schedule A). Attached to the 2006 return was "Statement 1 - Schedule A, Line 11 - Home Mortgage Interest Not Reported on Form 1098" which stated that petitioner had $12,275 of unreported mortgage interest (i.e., the amount of deferred interest) and that $4,591 of the unreported mortgage interest was attributable to acquisition indebtedness in excess of $1 million. Thus, petitioner claimed as a deduction only $7,684 of unreported mortgage interest that was attributable to acquisition indebtedness not in excess of $1 million. In addition to disallowing $7,684 of unreported mortgage interest, respondent also disallowed $3,192 of $67,827 of mortgage interest reported on Form 1098 as interest attributable to acquisition indebtedness in excess of $1 million, resulting in an aggregate disallowance of $10,876.

[3]Respondent disallowed the entire mortgage interest deduction petitioner claimed on his 2007 return, including interest attributable to acquisition indebtedness not in excess of $1 million.

[*8] The burden is upon the taxpayer to prove that he is entitled to the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Petitioner does not assert, nor would we find, that the requirements of section 7491(a) are met to shift the burden of proof to respondent. Consequently, we conclude that the burden of proof remains with petitioner.

Section 163 generally allows a deduction for all interest paid or accrued within the taxable year on indebtedness. Sec. 163(a). However, no deduction is allowed for personal interest paid or accrued during the taxable year unless specifically excepted by statute. Sec. 163(h). Among the enumerated items of deductible personal interest is qualified residence interest. Sec. 163(h)(2)(D).

The term "qualified residence interest" means any interest paid or accrued during the taxable year on acquisition indebtedness or home equity indebtedness on a qualified residence. Sec. 163(h)(3)(A). The term "acquisition indebtedness" means any loan that is secured by the residence and that is incurred to acquire, construct, or substantially improve a taxpayer's qualified residence. Sec. 163(h)(3)(B). The term "home equity indebtedness" means any loan secured by the qualified residence to the extent the aggregate amount of the indebtedness does not exceed the taxpayer's equity in the residence (i.e., the fair market value of the qualified residence reduced by the acquisition indebtedness of the residence). Sec.

[*9] 163(h)(3)(C). The aggregate amount that may be treated as acquisition indebtedness for any period is generally limited to $1 million, and the aggregate amount that may be treated as home equity indebtedness for any period is generally limited to $100,000. Sec. 163(h)(3)(B)(ii), (C)(ii). Accordingly, petitioner is not entitled to deduct qualified residence interest for 2006 and 2007 under section 163(h) to the extent the claimed interest deduction was attributable to acquisition indebtedness in excess of $1 million and home equity indebtedness over $100,000.

The parties agree that each property was a qualified residence within the meaning of section 163 during the subject years. The parties also agree that petitioner paid qualified residence interest on each of the properties during the subject years. The parties' agreement largely stops there.

The parties disagree over whether petitioner may deduct deferred interest that was capitalized into the principal of the Washington Mutual note; i.e., $12,275 for 2006 and $15,973 for 2007 that petitioner had accrued but not paid. Respondent relies upon the well-settled principle that a cash method taxpayer, such as petitioner, may not deduct accrued but unpaid interest. Petitioner asks us to disregard this well-settled principle and relies on Allan v. Commissioner, 856 F.2d 1169 (8th Cir. 1988), aff'g 86 T.C. 655 (1986). Petitioner also argues that he

**[\*10]** "paid" interest within the meaning of section 163(a) by promising to pay outstanding interest that had accrued on a secured mortgage note and simultaneously surrendering additional property rights in the real estate under the mortgage to the same lender. Petitioner contends that he satisfies the literal requirements of section 163(a) and therefore that he is entitled to claim deductions for accrued but unpaid interest that was capitalized into the principal of the Washington Mutual note. We agree with respondent.

It is well settled that a cash method taxpayer, such as petitioner, is allowed a deduction for interest paid during the taxable year in cash or its equivalent. Davison v. Commissioner, 107 T.C. 35, 41 (1996), aff'd, 141 F.3d 403 (2d Cir. 1998); Menz v. Commissioner, 80 T.C. 1174, 1185 (1983). The mere delivery of a promissory note to satisfy an interest obligation, without an accompanying discharge of the note, is a mere promise to pay and not a payment in a cash equivalent. Don E. Williams Co. v. Commissioner, 429 U.S. 569, 577-578 (1977); Davison v. Commissioner, 107 T.C. at 41. As the Supreme Court recognized, the reasoning for such a rule is that "the note may never be paid, and if it is not paid, 'the taxpayer has parted with nothing more than his promise to pay.'" Don E. Williams Co. v. Commissioner, 429 U.S. at 578 (quoting Hart v. Commissioner, 54 F.2d 848, 852 (1st Cir. 1932), rev'g 21 B.T.A. 1001 (1930)). It is equally well

**[*11]** settled that when a lender withholds a borrower's interest payments from the loan proceeds, the borrower is determined to have paid interest with a note, not cash or its equivalent, and is consequently not entitled to a deduction until the loan is repaid.  Davison v. Commissioner, 107 T.C. at 41; Schubel v. Commissioner, 77 T.C. 701, 704 (1981); Rubnitz v. Commissioner, 67 T.C. 621, 628 (1977); Cleaver v. Commissioner, 6 T.C. 452, 454 (1946), aff'd, 158 F.2d 342 (7th Cir. 1946).  Similarly, when a lender debits the required interest payment to a loan account (i.e., capitalizing the required interest payment by adding its amount to the loan's principal), the borrower is not entitled to a current interest deduction for the interest debited.  Heyman v. Commissioner, 70 T.C. 482, 485-487 (1978), aff'd without published opinion, 633 F.2d 215 (6th Cir. 1980); Rubnitz v. Commissioner, 67 T.C. at 627-628.  Whether interest is charged by way of an original issue discount (OID) (i.e., interest withheld from the loan proceeds) or as capitalized interest (i.e., periodic interest added to the loan's principal), the economic reality is the same:  the borrower is able to postpone paying the interest due to sometime in the future, either over the life of the loan or as part of a balloon payment upon maturity.  See Heyman v. Commissioner, 70 T.C. at 485-487; Rubnitz v. Commissioner, 67 T.C. at 627-628.  Because the loan agreement at issue allowed petitioner to do just that, he may not deduct any accrued but unpaid

**[\*12]** interest until he actually discharges his obligation to pay the accrued interest by a cash or cash-equivalent payment or by a disposition or transfer of the Michigan property. Cf. sec. 1.163-7(a), Income Tax Regs. (amount of deduction for OID is determined by using the constant yield method described in section 1.1272-1(b), Income Tax Regs.).

Flying in the face of this long history of settled caselaw, petitioner now asks us to "turn away from this outdated position and look at the issue as one that focuses on the relative certainty of payment." Petitioner cites Allan v. Commissioner, 856 F.2d 1169, for the proposition that he has "paid" interest because adding accrued interest to the principal of a mortgage note is akin to taking out a second mortgage to pay the interest accrued and is thus indistinguishable in substance from borrowing from a third party to make the interest payments. Petitioner's reliance on Allan is misplaced for a couple of reasons.

First, the facts of Allan differ from those in the instant case in a key respect: Allan involved an accrual basis taxpayer while petitioner is a cash basis taxpayer. It is well settled that a taxpayer must accept the tax consequences of the manner he has selected to manage his affairs even though alternative arrangements might provide more favorable results. Don E. Williams Co. v. Commissioner, 429 U.S. at 580-581; Noble v. Commissioner, 79 T.C. 751, 767 (1982). Therefore, the fact that

[*13] the taxpayer in Allan was entitled to a deduction for accrued interest does not assist petitioner because, when it comes to interest deductions, the tax law permits only accrual basis taxpayers to deduct accrued, but unpaid, interest.

Second, the Court of Appeals for the Eight Circuit's holding in Allan was much narrower than petitioner suggests. That is, for the sole purpose of determining the amount realized under Commissioner v. Tufts, 461 U.S. 300 (1983), capitalized interest was properly includible in the amount realized when the lender foreclosed on the loan because the borrower's obligation to pay any interest added to the loan principal was a true loan. Allan v. Commissioner, 856 F.2d at 1173-1174. The Court of Appeals reasoned that the relationship between the borrower and the lender was arm's length and that the borrower had legitimate business reasons to defer interest payments to allow the borrower additional time to work out its financial difficulties. Id. at 1173. Further, the Court of Appeals believed the borrower was legally obligated to repay all the deferred interest once it recovered financially. Id. Finally, the Court of Appeals rejected the Commissioner's position that the capitalized interest could not be part of any true loan because the lender could not pay itself interest; in reaching that conclusion, the Court of Appeals relied on the fact that the borrower was liable for the

**[*14]** increased principal amount of the loan and there was no evidence that the transaction was tax motivated. Id. at 1173-1174.

However, this line of reasoning underlying the inclusion of deferred interest in the amount realized cannot resolve the timing issue of the corresponding interest deduction. It is true, for the purpose of determining whether deferred interest is includible in the amount realized, that it makes no difference whether a taxpayer had taken out a second nonrecourse mortgage from a third party to discharge his interest obligation or had allowed his primary lender to add the interest payments to the principal of the original nonrecourse loan. That is because in either instance the taxpayer received the loan proceeds tax free on the assumption that he would repay the loan balance, and as the Supreme Court explained, "[u]nless the outstanding amount of the mortgage is deemed to be realized [upon the disposition or transfer of the property securing the note], the mortgagor effectively will have received untaxed income at the time the loan was extended". Commissioner v. Tufts, 461 U.S. at 309-310. The rationale of ensuring that a mortgagor does not receive tax free the proceeds of a nonrecourse loan used to "pay" interest has no bearing on when the mortgagor may claim an interest deduction. For a cash basis taxpayer, it makes a world of difference, however, whether he borrows from a third party to discharge his interest obligation or simply postpones paying interest by

**[*15]** capitalizing it, because a current interest deduction is justified only when the taxpayer's liability to the initial lender has been discharged and not merely postponed. See Battelstein v. Commissioner, 631 F.2d 1182, 1185 n.3 (5th Cir. 1980); McAdams v. Commissioner, 15 T.C. 231, 235 (1950), aff'd, 198 F.2d 54 (5th Cir. 1952). This timing rule is consistent with Allan in that had the borrower there been a cash basis taxpayer, as is the case with petitioner, the taxpayer would be entitled to an interest deduction only upon the eventual disposition or transfer of the secured property, the same moment when it must realize the deferred interest as income.

Finally, we note that the Court of Appeals for the Sixth Circuit, the court to which an appeal of this case would most likely lie, has affirmed this Court's ruling that a borrower has simply postponed payment and remitted nothing more than a promise to pay interest when, as here, a lender debits a loan by a required interest payment. See Heyman v. Commissioner, 633 F.2d 215. Moreover, the Supreme Court has held that the established analysis relating to the deductibility of interest is not transformed by virtue of the fact that a note is secured. Don E. Williams Co. v. Commissioner, 429 U.S. at 578 n.9. Thus, even if we assume petitioner had given up some property rights in the Michigan property that secured the Washington Mutual note when Washington Mutual added the deferred interest to

**[\*16]** the principal, this factor is not determinative because we focus on whether petitioner had discharged his obligation to pay the interest due. In this case where petitioner has not discharged but only postponed his obligation of paying interest, we conclude that he may not deduct the deferred interest.

## II. Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty for 2007 because petitioner substantially understated his income tax or, alternatively, for negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1) and (2).[4] There is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on a return for a taxable year or $5,000. Sec. 6662(d)(1)(A). Alternatively, we will sustain respondent's determination to impose an accuracy-related penalty if we determine petitioner failed to make a reasonable attempt to comply with provisions of the internal revenue laws or disregarded the rules or regulations by acting carelessly, recklessly, or with intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs.

---

[4]In the notice of deficiency for 2007 respondent also maintains that petitioner should be charged with an accuracy-related penalty for substantial valuation misstatements under sec. 6662(b)(3). Because no valuation issues are present in this case and respondent makes no such contentions on brief, we conclude respondent has abandoned this position.

[*17] Only one accuracy-related penalty may be imposed for a given portion of an underpayment even though that portion implicates more than one form of misconduct described in section 6662. Sec. 1.6662-2(c), Income Tax Regs.

Under section 7491(c), respondent bears the burden of production with respect to petitioner's liability for the accuracy-related penalty. To meet this burden, respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent sustains his burden of production, however, petitioner bears the burden of proving that the penalty is unwarranted by establishing an affirmative defense such as reasonable cause or substantial authority. Id. at 446-447. Respondent has met his burden of production by showing that petitioner acted at least negligently when he claimed a deduction for mortgage interest attributable to acquisition indebtedness in excess of $1 million. And in the light of the substantial authority that a cash basis taxpayer may claim a qualified residence interest deduction only for interest he paid in cash or cash equivalent, respondent has also met his burden of production by showing that petitioner acted negligently when claiming a deduction for deferred mortgage interest that was only accrued but not actually paid, a deduction that would appear to a reasonable and prudent person "too good to be true." See sec. 1.6662-

**[\*18]** 3(b)(1)(ii), Income Tax Regs.  Finally, respondent will have also met his burden of production for imposing the accuracy-related penalty if Rule 155 computations show that petitioner had a substantial understatement of income tax. See, e.g., Jarman v. Commissioner, T.C. Memo. 2010-285, 100 T.C.M. (CCH) 599, 602 (2010); Prince v. Commissioner, T.C. Memo. 2003-247, 86 T.C.M. (CCH) 283, 288 (2003).

Petitioner argues that the accuracy-related penalty does not apply because he believed the literal language of section 163(h)(3) allowed him to deduct interest that was "paid or accrued."  Petitioner stresses that this belief is reinforced with reference to section 163(e)(2)(C), which allows cash basis taxpayers deductions for OID on certain short-term obligations only when paid.[5]  We construe this line of reasoning to mean that petitioner proposes that both the substantial authority and reasonable cause defenses preclude application of the accuracy-related penalty.

---

[5]Petitioner's argument is essentially that if it is universally true that a cash method taxpayer can claim an interest deduction only when he pays the interest, sec. 163(e)(2) is redundant.  But this argument reveals petitioner's lack of understanding of the timing issues involving interest deductions.  Generally, the amount of the deduction for an OID for each year is determined by using the constant yield method described in sec. 1.1272-1(b), Income Tax Regs., which may not coincide with actual payments, even for a cash basis taxpayer.  Sec. 1.163-7(a), Income Tax Regs. However, in the case of a short-term obligation with a fixed maturity date not more than one year from the obligation's issue date, OID is deductible only when paid for a cash basis taxpayer, disregarding the constant yield method.  Thus, sec. 163(e)(2) is anything but redundant.

**[*19]** Secs. 6662(d)(2)(B)(i), 6664(c)(1). We are unpersuaded that petitioner meets the requirements for either defense.

Under section 6662(d)(2)(B)(i), an accuracy-related penalty does not apply to the portion of an understatement if the taxpayer's position with respect to such portion is supported by substantial authority. <u>See also</u> sec. 1.6662-4(d)(1), Income Tax Regs. Substantial authority exists only if the weight of relevant and persuasive authorities for the taxpayer's position outweighs those in favor of the opposing position. <u>See</u> sec. 1.6662-4(d)(3)(i) and (ii), Income Tax Regs. The substantial authority standard is an objective test that is less stringent than the more likely than not standard but more demanding than the reasonable basis standard. Sec. 1.6662-4(d)(2), Income Tax Regs. Because substantial authority is measured objectively, a taxpayer's belief about the weight of authority in support of his position is irrelevant. <u>See</u> sec. 1.6662-4(d)(3)(i), Income Tax Regs.

Petitioner claims he relied on the plain meaning of section 163(h)(3) to support his position that a cash basis taxpayer is entitled to deduct interest that is "paid or accrued". On the other hand, the opposing position, namely that a cash basis taxpayer may deduct only paid interest, has been confirmed by multiple authorities. <u>See, e.g.</u>, <u>Don E. Williams Co. v. Commissioner</u>, 429 U.S. at 574; <u>Davison v. Commissioner</u>, 107 T.C. at 41; <u>Menz v. Commissioner</u>, 80 T.C. at

**[*20]** 1185-1186; <u>Heyman v. Commissioner</u>, 70 T.C. at 485; <u>Rubnitz v. Commissioner</u>, 67 T.C. at 627-628. In so ruling, the Supreme Court explained that the Code includes the phrase "paid or accrued" in many of its deduction provisions to emphasize that taxpayers are afforded deductions based upon the accounting method they have selected. <u>See</u> <u>Don E. Williams Co. v. Commissioner</u>, 429 U.S. at 574 n.5. This reasoning directly undercuts petitioner's contention that "paid or accrued" should be defined as inclusive and instead requires that the phrase be read as disjunctive; i.e., that a cash basis taxpayer is not permitted to disregard his chosen accounting method and deduct interest he has accrued but not paid. In view of the prevalence of influential sources that stand for the contrary position, we conclude petitioner's reading of section 163(h) is not supported by substantial authority.

Recognizing the substantial weight of authority against his position, petitioner asked the Court to overturn years of precedent. In doing so, petitioner cited <u>Allan v. Commissioner</u>, 856 F.2d 1169, for the proposition that he "paid" the deferred interest. As discussed elsewhere in this opinion, the holding in the <u>Allan</u> case was much narrower than petitioner proposed and thus could not work to neutralize the substantial authority that a cash method taxpayer may not currently deduct deferred interest.

**[*21]** Although the substantial authority defense is unavailable to petitioner, he may nonetheless be excused from an accuracy-related penalty if he meets the reasonable cause exception of section 6664(c)(1). Under that section, the accuracy-related penalty is not imposed on any portion of an underpayment of tax for which petitioner proves that he had reasonable cause and acted in good faith. Reasonable cause is a fact-specific inquiry that incorporates all relevant circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The extent to which petitioner endeavored to assess his proper tax liability is of paramount significance in determining whether he acted with reasonable cause and in good faith. Id.

When petitioner's endeavors are measured against these principles, we conclude petitioner did not have reasonable cause and did not act in good faith when he acted upon his belief that the "plain language interpretation" of section 163(h) enabled him to receive deductions for unpaid but accrued interest. Given the multiple authorities that disallow cash basis taxpayers' interest deductions for accrued interest, petitioner's understanding of the Code constitutes, at best, a careless disregard of rules or regulations. See sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. A taxpayer is careless in his disregard for rules or regulations if he fails to exercise reasonable diligence to determine the correctness of a return position that is contrary to a rule or regulation. Sec. 1.6662-3(b)(2), Income Tax

[*22] Regs. Without considerable effort, petitioner could have learned that his interpretation of section 163 conflicts with established authority. However, petitioner neglected to take the minimal time needed to find the abundance of sources that would have enabled him to arrive at this realization and accurately assess his tax liability. His reliance on Allan does not change our conclusion because its holding, as explained above, does not support petitioner's position. Even if the Court of Appeals' reasoning in the context of "amount realized" could be interpreted to apply to timing of interest deductions, this interpretation would be equivocal at best in the light of the well-established case law rejecting petitioner's position. Thus, any reliance on Allan could not have been reasonable under the facts. Accordingly, petitioner did not endeavor to determine his true tax liability with reasonable diligence and is consequently not entitled to the reasonable cause exception to the accuracy-related penalty.

In addition, petitioner maintains that he "clearly relied on the advice of tax advisors" in taking deductions for interest that was accrued but not paid on his 2007 return. Good-faith reliance on a tax professional's advice may establish reasonable cause if the taxpayer proves each of the following requirements by a preponderance of the evidence: (1) the adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and

[*23] accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioner has introduced no evidence to show that he relied on the advice of tax professionals in his return preparation, nor does the record enable us to draw such an inference. Accordingly, we sustain respondent's imposition of the penalty under section 6662(a) to the extent attributable to petitioner's claimed deductions of deferred mortgage interest.

Lastly, petitioner failed to introduce evidence or advance any arguments to show he acted with reasonable cause or in good faith in attempting to deduct mortgage interest attributable to acquisition indebtedness in excess of $1 million. Accordingly, we likewise sustain respondent's imposition of a penalty under section 6662(a) to the extent petitioner's underpayment is attributable to his claimed deductions of mortgage interest on acquisition indebtedness in excess of $1 million.

We have considered all of the parties' arguments in reaching our decisions herein, and all arguments not discussed herein have been rejected as moot, irrelevant, or without merit.

**[*24]** To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.
